State of Connecticut *v.* Ousatonic Water Co.

THE STATE OF CONNECTICUT *vs.* THE OUSATONIC WATER
COMPANY.

The Ousatonic Water Company was chartered with power to construct a
dam across the Ousatonic River, the charter containing the following
provision:—"In the construction and maintenance of their dam it
shall be their duty, with the approval of the selectmen of the town,
to alter the bed or course of any highway where necessary, and they
shall have power to enter upon and use all lands that shall be neces-
sary in making such alterations." Held that the charter made it the
duty of the company to make such alterations of highways where
necessary, and that it was not left to their discretion.

Their dam set back the water in such a way that in spring freshets a high-
way along the river was exposed to obstructions from ice that came
down the river and accumulated at the head of the pond. Held that
so far as this was an ordinary effect of spring freshets, the company
was bound to protect the road from it by some effective means; but
that it would be otherwise if it was only the effect of an extraordi-
nary flood or caused by unusual circumstances not to have been
expected.

Where their duty was clear mandamus at the suit of the state held to be
the proper remedy.

But since the company had the right to use its own judgment as to the
mode of remedying the evil, a mandamus was held to be an improper
one that ordered them to do it by altering the course or bed of the
road. The court had no right to prescribe the particular manner in
which it should be done.

[Argued June 12th, 1883—decided March 28th, 1884.]

APPLICATION for a mandamus; brought to the Superior
Court, and reserved, on a demurrer of the defendants to
the application, for the advice of this court. The case is
sufficiently stated in the opinion.

*D. Torrance*, with whom was *W. B. Wooster*, in support
of the demurrer.

*J. W. Alling*, contra.

PARK, C. J. The application for the writ of mandamus
in this case contains the following paragraph :—" Said attor-

ney moves this honorable court to issue a writ of mandamus requiring said company to alter the bed or course of said river road, at the places above indicated, [the road and places in it previously described in the application,] in such a manner as that public travel will not be obstructed by the water and ice in the manner above stated, or to signify cause to the contrary thereof," &c.

The alternative writ of mandamus which issued from the court contains the following paragraph :—" Therefore, that due and speedy justice may be done in this behalf, it is hereby required and enjoined of you, the said Ousatonic Water Company, that on or before the first day of May, 1883, you commence and continue until they are finished; such proceedings as will alter the bed or course of said river road, in said three sections thereof, in such a manner as that public travel over said road will not, at said sections or either of them, be prevented, obstructed or hindered, by water and ice coming from your pond as above stated ; and as shall satisfy the requirements and obligations of your charter and the law in the premises ; or signify cause to the contrary thereof to this court."

Hence it appears, that the state, through its attorney, asked, and the court granted, an alternative mandate, requiring the defendants to *alter the bed or course* of the river road in three sections thereof.

The object of the alteration of the road is stated to be, that the public travel at the three places might not be obstructed by water and ice, which, coming down the river at certain seasons of the year, and meeting the water and ice in the defendants' pond in times of freshet, are thrown back upon the road. The mandate is based upon the supposed duty of the defendants to keep the river road free from such obstructions, because they are caused by their dam across the river, which flows back the water, and thereby causes the obstructions. This duty is claimed to be imposed by the defendants' charter, which provides that " in the construction and maintenance of their dam it shall be their duty to alter the bed or course of any road or public high-

State of Connecticut *v.* Ousatonic Water Co.

way, with the consent and approval of the selectmen of the town where the highways are located, whenever it becomes convenient or necessary so to do;" and for such purpose their charter further provides that they shall have power to enter upon and use all the lands that shall be necessary to make such alterations, and shall have power to cause such lands to be legally condemned, and the damages to be assessed by a competent tribunal in case the parties cannot agree upon the amount to be paid for them. Hence, it is said, arises the implied obligation to keep the river road, at the places designated, free from such obstructions.

If all this be as the state claims, still we think the application and alternative mandamus are demurrable for requiring that the obstructions to public travel upon the river road, at the places designated, should be prevented by *altering the course or bed of the road,* and in no other manner. The peremptory mandamus must follow the alternative mandamus in this particular, if one should issue. *Douglas* v. *Town of Chatham,* 41 Conn., 211. Altering the course of the road at the places designated would be constructing a new road on other ground, as a substitute for and in the place of the river road. Altering the bed of the road at such places would be raising the road bed sufficiently high to prevent the obstructions. If the same end could be accomplished in some other way, the defendants should have been left at liberty to adopt that mode of preventing the nuisance. Such mode might be adopted at much less expense, and be much more effectual. A wall constructed along the river side of the road at the places described might be sufficient to prevent the obstruction, as well as the mode ordered to be adopted, and still the expense be much less to the defendants. At all events, the mode of preventing the mischief should have been left to the option of the defendants; and inasmuch as the application and the alternative mandamus do not so leave it, we think the demurrer was well taken, and that the application and mandamus are insufficient.

This is enough to dispose of the case as it appears here.

But the matter will not probably stop here, and we therefore think it advisable to express an opinion upon the merits of the cause.

Power is given to the defendants by their charter to alter the course or bed of existing highways, with the approval of the selectmen of the town where the highways are located, whenever it becomes necessary or convenient to do so in the construction and maintenance of their dam across the Housatonic river; and power is further given them to condemn lands for the purpose. Obviously this provision was intended to apply to cases where the waters of the river, raised by the dam when completed, will flow upon existing highways to such an extent as to form an obstruction to public travel, by means of the water or ice, or in some other manner. The charter seems to take it for granted in such cases that the defendants will prevent such obstructions by altering the course or bed of the highways, or make provision by some other means, so that public travel will not be incommoded; and therefore no compulsory measures are expressly provided. But we think the duty of the defendants in such cases clearly exists by implication. It would be unreasonable to suppose that the legislature intended, in order to promote private enterprise for private emolument, to grant the power to render existing highways impassable, without the corresponding obligation to restore their usefulness and thus subject towns to great expense and loss in consequence. Such enactment would be contrary to the whole course of legislation heretofore had in relation to kindred subjects, and would be contrary to common reason and natural justice. And certainly it would be folly in the legislature to grant the right to alter the course and bed of highways, and condemn lands for the purpose, under the expectation that the defendants would voluntarily exercise the power whenever they should render highways useless for public travel, and so intended to leave and did leave it wholly optional with them whether they should exercise the power or not. Indeed, the whole express power given the defendants in their charter to interfere with high-

ways, is confined to alterations in their bed or course. No where can it be found that the right to take or incumber existing highways is directly given. It arises only by implication from the provision made for altering them when necessary. Of course there could be no necessity for doing this unless the highways were obstructed. Hence arises their right by implication. We think the defendants are wrong in their claim upon this question.

The only remaining question of importance grows out of the following allegations in the application :—" In the season of the year when the ice breaks up in said Housatonic river it forms an ice dam or ice dams near the head of the pond made by the dam so built by the defendants, and along the westerly boundary of Oxford, whereby the water and ice coming down the river are detained and thrown back, and carried in great quantities over portions of the river road in said Oxford, and the ice, as the water recedes, is left on the highway in large masses. In consequence whereof, the travel over said road, during said season of the year, and for a period of from two to three months, is much obstructed and impeded, and thereby the public are very much injured and inconvenienced."

If the ice dams formed at the place described are naturally produced by the defendants' pond, and are a common, ordinary occurrence in the spring of the year, and in consequence thereof masses of water and ice are thrown upon the river road at the places designated in quantities sufficient to obstruct public travel for a considerable period of time, then the defendants are in duty bound to provide some mode of preventing such obstructions; and it matters not that the configuration of the shore and the contracted space of the river combine with the pond in the production of such accumulations.

When the defendants built their dam they were bound to know the habits and peculiarities of this river—what effects had been produced along its banks by its ordinary freshets in the spring of the year when the ice breaks up; they were bound to notice the configuration of the shore,

the contracted space at places for the waters of the river to pass, the formation of ice dams, and so far as science could reasonably discover, what would be the effect of a pond created by raising the water twenty-two feet above the natural flow of the stream at the place where the dam was erected, and they were bound to act in view of all these facts. The defendants were bound to provide against all the natural result of ordinary freshets in the river, whenever they might occur, and with whatever ordinary combination of circumstances they might be attended. The defendants were not bound to make provision against extraordinary freshets in the river, which rarely happen, or against extraordinary effects of ordinary freshets, owing to some peculiar and uncommon combination of circumstances. They were bound to consider and prepare for the ordinary results of ordinary freshets, and not extraordinary freshets, nor extraordinary results. *Pixby* v. *Clark*, 35 N. York, 520; *Bell* v. *McClintock*, 9 Watts, 119; *Gray* v. *Harris*, 107 Mass., 492; *Lehigh Bridge Co.* v. *Lehigh Navigation Co.*, 4 Rawle, 9; Angell on Watercourses, sec. 349.

If the case of the state comes within the principles here stated, then this question is with the state; otherwise not.

We think that mandamus, in the name of the state, is a proper remedy to compel the defendants to perform their duty in the premises, if they have one to perform. "No better rule can be laid down upon this subject than that, where the charter of a corporation, or the general statutes in force and applicable to the subject, impose a specific duty, either in terms, or by a fair and reasonable construction and implication, and there is no other specific or adequate remedy, mandamus will lie." 1 Redf. on Railways, 644; High on Extraordinary Remedies, sec. 277; *Railroad Co.* v. *The State*, 37 Ind., 489; *Cambridge* v. *Railroad Co.*, 7 Met., 70; *Patterson* v. *Vail*, 43 Iowa, 142.

We advise the Superior Court that the application and the alternative mandamus are insufficient.

In this opinion the other judges concurred.