## The City of Pontiac v. Emeline Carter.

*Public streets: Changing grade: Damages: Adjacent property.* An action, will not lie against a city for damages for the injury to adjacent property caused by a change having been lawfully made by the proper city authorities in the grade of a public street.

*Municipal corporations: Legislative action: Damages.* No action will lie: against a municipal corporation or body for an injury resulting from a lawful exercise of its legislative authority.

*Public streets: Changing grade: Public convenience.* The fact that the grade had once before been fixed and the plaintiff had built with reference to it, while it might make more manifest the particular hardship, would introduce no new elements into the case, nor would it affect the principle; there is precisely the same reason and the same justification for changing a grade once established, when the public convenience is found to require it, that there is for fixing it in the first place.

*Exercise of public authority: Incidental injuries.* The injury in all such cases is incidental to an exercise of public authority, which in itself˙ must be assumed to be proper, because it is had by a public body acting within its jurisdiction, and not charged with malice or want of good faith.

*Public highways: Private property: Damages: Award.* The damages awarded in proceedings to take private property for a public street would cover this possible injury, as they cover all damages resulting from the doing in a proper manner whatever the public authorities have· the right to do.

*Public highways: Dedication: Gift: Incidental injuries: Benefits.* And one· who gives his land for the purposes of a public highway is supposed to· contemplate all the same contingencies, and to make the gift on the supposition that the incidental benefits will equal or exceed all possible: incidental injuries.

*Submitted on briefs April 30.    Decided June 8.*

Error to Oakland Circuit.

PONTIAC *v.* CARTER.

*James A. Jacokes* and *A. C. Baldwin,* for plaintiff in error.

*Moore & Moore* and *Sylvester Larned,* for defendant in error.

COOLEY, J:

The weight of authority against this action is overwhelming. In the leading case of the *Cast Plate Manufacturers v. Meredith, 4 T. R., 794,* which, like the one before us, was an action to recover damages suffered from raising the grade of a public way, *Lord Kenyon* states very concisely some of the reasons which preclude a private remedy in such a case: "If this action could be maintained, every turnpike act, paving act and navigation act would give rise to an infinity of actions. If the legislature think it necessary, as they do in many cases, they enable the commissioners to award satisfaction to the individuals who happen to suffer. But if there be no such power, the parties are without remedy, provided the commissioners do not exceed their jurisdiction. * * Some individuals suffer an inconvenience under all these acts of parliament, but the interests of individuals must give way to the accommodation of the public."—*p. 796.* The cases of *Boulton v. Crowther, 2 B. & C., 703,* and *The King v. The Commissioners of Sewers, 8 B. & C., 355,* hold the same doctrine. In the leading American case of *Callender v. Marsh, 1 Pick., 418, 430, Parker, Ch. J.,* sets forth more fully the right of the public: "The streets on which the plaintiff's house stands had become public property by the act of laying them out conformably to law, and the value of the land taken must have been either paid for or given to the public at the time, or the street could not have been legally established. Being legally established, although the right or title in the soil remains in him from whom the use was taken, yet the public acquired the right not only to pass over the surface in the state it was in when first made a street, but the right also to repair and amend the street, and, for this purpose, to dig down and remove the

soil sufficiently to make the passage safe and convenient. Those who purchase house-lots bordering on streets are supposed to calculate the chance of such elevations and reductions as the increase in population of the city may require, in order to render the passage to and from the several parts of it safe and convenient, and, as their purchase is always voluntary, they may indemnify themselves in the price of the lot which they buy, or take the chance of future improvements, as they shall see fit. The standing laws of the land giving to surveyors the power to make these improvements, every one who purchases a lot upon the summit or on the decline of a hill, is presumed to foresee the changes which public necessity or convenience may require, and may avoid or provide against loss." And again: "Highways, * * when rightfully laid out, are to be considered as purchased by the public of him who owned the soil, and by the purchase the right is acquired of doing everything with the soil over which the passage goes which may render it safe and convenient; and he who sells may claim damages not only on account of the value of the land taken, but for the diminution of the value of the adjoining lots, calculating upon the future probable reduction or elevation of the street or road; and all this is a proper subject for the inquiry of those who are authorized to lay out, or of a jury, if the parties should demand one. And he who purchases lots so situated, for the purpose of building upon them, is bound to consider the contingencies which may belong to them." The following cases either refer to *Callender v. Marsh* as authority, and follow it, or recognize and approve the principles on which it rests: *Radcliff's Executors v. Brooklyn*, 4 N. Y., 195; *Matter of Furman St.*, 17 Wend., 667; *Graves v. Otis*, 2 Hill, 466; *Wilson v. New York*, 1 Denio, 595; *Benedict v. Goit*, 3 Barb., 459; *Ely v. Rochester*, 26 Barb., 133; *Kavanagh v. Brooklyn*, 38 Barb., 232; *Green v. Reading*, 9 Watts, 382; *Henry v. Bridge Company*, 8 W. & S., 85; *O'Connor v. Pittsburgh*, 18 Penn. St., 187; *In re Ridge St.*, 29 Penn. St., 391; *Benden*

*v. Nashua, 17 N. H., 477; Sprague v. Worcester, 13 Gray, 193; Clark v. Wilmington, 5 Harr., 243; Humes v. Knoxville, 1 Humph., 403; Cotes v. Davenport, 9 Iowa, 227; Cole v. Muscatine, 14 Iowa, 296; Russell v. Burlington, 30 Iowa, 262; Burlington v. Gilbert, 31 Iowa, 369; Roberts v. Chicago, 26 Ill., 249; Nevins v. Peoria, 41 Ill., 502* (where, as well as in some other cases, the right of a city to improve the streets as the authorities shall determine is best for the public interests, is declared to rest on the same ground as the right of a private person to deal with his own possessions) ; *Snyder v. Rockport, 6 Ind., 237; Macy v. Indianapolis, 17 Ind., 267; Lafayette v. Bush, 19 Ind., 326; St. Louis v. Gurno, 12 Mo., 414; Lambar v. St. Louis, 15 Mo., 610; Hoffman v. St. Louis, 15 Mo., 651; White v. Yazoo, 27 Miss., 357; Commissioners v. Withers, 29 Miss., 21; Hovey v. Mayo, 43 Me., 322; Rounds v. Mumford, 2 R. I., 154; Keasy v. Louisville, 4 Dana, 154; Alexander v. Milwaukee, 16 Wis., 247; Reynolds v. Shreveport, 13 La. Ann., 426; Bennett v. New Orleans, 14 La. Ann., 120; Dorman v. Jacksonville, 13 Fla., 538; S. C., 7 Am. Rep., 233; Simmons v. Camden, 26 Ark., 276; S. C., 7 Am. Rep., 620; Goszler v. Georgetown, 6 Wheat., 593; Smith v. Washington, 20 How., 135.* In the case last cited the action was based upon an alleged "unlawful and wrongful" alteration of a street to the injury of the plaintiff, but *Grier, J.,* in delivering the opinion of the court, says of the corporate authorities, that, "having performed this trust confided to them by law according to the best of their ability, judgment and discretion, without exceeding the jurisdiction and authority vested in them as agents of the public, and on land dedicated to public use for the purposes of a highway, they have not acted 'unlawfully or wrongfully,' as charged in the declaration. They have not trespassed on the plaintiff's property, nor erected a nuisance injurious to it, and are consequently not liable to damages, where they have committed no wrong, but have fulfilled a duty imposed on them

by law as agents of the public.    The plaintiff may have suffered inconvenience, and been put to expense in consequence, of such action; yet, as the act of defendants is not unlawful or wrongful, they are not bound to make any recompense; it is what the law styles *damnum absque injuria.* Private interests must yield to public accommodation; one cannot build his house on the top of a hill in the midst of a city, and require the grade of a street to conform to his convenience at the expense of that of the public."—*p. 148.* Some of the cases cited are those in which the grade once established, and to which the plaintiff had conformed in building, had been changed to his injury afterwards; others were cases in which the injury resulted from the first grading.

It is nevertheless insisted on behalf of the plaintiff, that the cases cited are unsound in principle, and that, as there are opposing decisions, this court, which has hitherto never had occasion to consider the precise question, is at liberty to choose between them, and should follow those which are sound, rather than those which are most numerous.

Of the cases to which our attention is called by counsel for the plaintiff, those in Ohio do unquestionably sustain his view.    *McCombs v. Akron, 15 Ohio, 474,* is directly in point, but is open to the criticism of having been decided in reliance on *Rhodes v. Cleveland, 10 Ohio, 159,* which only holds that one whose land is flooded by means of ditches cut for municipal purposes may maintain an action therefor; a decision by no means requiring the one in *McCombs v. Akron.*    The last named case came up again in *18 Ohio, 229 (Akron v. McCombs),* where the doctrine before declared was affirmed, but with little discussion, and apparently without much consideration of any thing beyond the general question of the liability of a municipal corporation to an action sounding in tort.    A more distinct affirmation of the same doctrine is found in *Crawford v. Delaware, 7 Ohio St., 459,* which holds, that for any injury occasioned to an adjoining lot-owner by a change in the grade once established for a street an action will lie, but not for an injury

occasioned by the first grading, for the owner "is presumed to purchase the lot with a view to a future improvement of the street, in such reasonable manner as the public authorities may deem expedient."—*p. 470.* The following Wisconsin cases are referred to: *Pratt v. Brown, 3 Wis., 603; Fisher v. Horicon Co., 10 Wis., 351; Newell v. Smith, 15 Wis., 101,* in all of which the complaint was that plaintiff's lands were flooded, or about to be, by unlawful structures across running streams; *Walker v. Shepardson, 4 Wis., 486,* which was an injunction-bill to restrain an · improvement in a navigable stream for the benefit of one riparian proprietor to the prejudice of another; *Weeks v. Milwaukee, 10 Wis., 242,* which was a case in which an unlawful exemption from taxation was complained of; *Smith v. Milwaukee, 18 Wis., 63,* where the complaint was that a nuisance was being created on plaintiff's premises by the negligent construction of a public improvement; *Pettigrew v. Evansville, 25 Wis., 223,* which was an action to restrain a municipal corporation from causing plaintiff's premises to be flooded by means of an artificial channel dug to drain a pond. It is manifest that none of these cases is in point, and they must have been cited only as illustrations of the legal maxim that where there is a right there is a remedy; a maxim that certainly is not in dispute here. *Goodall v. Milwaukee, 5 Wis., 32,* is more in point, but it differs from this in the important particular that the city had not only changed an established grade, but they had done so to the detriment of persons who had built upon the street in reliance upon a solemn pledge of the faith of the city that the grade should not be changed. And this pledge was evidently regarded by the court as partaking, when acted upon, of the nature of a contract. *Hooker v. New Haven, etc., Co., 14 Conn., 146,* was an action for flooding lands, and neither that nor *Stevens v. Middlesex Canal, 12 Mass., 466; Rowe v. Bridge Corporation, 21 Pick., 344,* or *The Canal Appraisers v. The People, 17 Wend., 604,* has any relevancy to the question at issue here. *Meares v. Wilming-*

*ton, 9 Ired., 73*, was a case in which the question involved was one of negligence in the construction of a public work. *Pumpelly v. Green Bay Co., 13 Wall., 166*, was an action for flooding the plaintiff's premises, depositing upon them sand, tearing up his trees, etc. *Eaton v. Railroad Co., 51 N. H., 504*, was a similar case. The street-grading cases are commented upon, and some of them criticised in this case, but the case itself is well decided without calling them in question.

This examination of the cases relied upon by the plaintiff shows very plainly that those in the state of Ohio stand substantially alone. And we cannot doubt that the more numerous cases are also best sustained in principle. It was held in *Larkin v. Saginaw County, 11 Mich., 88*, that no action would lie against a municipal corporation or body for an injury resulting from a lawful exercise of its legislative authority. The injury in such a case is incidental to an exercise of the law-making power, and if an action were admissible in every instance in which private rights were injuriously affected by state or municipal legislation, it would be difficult to suggest a change in the law that would not give some one a right to demand compensation from the public for consequential injuries, so that improvements in the law would be precluded, from the absolute impossibility of responding to such demands. The cases in illustration of this principle are too numerous for citation, and among them are cases like that of the *Charles River Bridge v. Warren Bridge, 7 Pick., 344; S. C. in error, 11 Pet., 420;* and the *Binghamton Bridge Case, 27 N. Y., 87; S. C. in error, 3 Wall., 51*, in each of which the legislation complained of threatened the utter destruction of the value of a very important franchise, but in each the undoubted right of the legislature to adopt the prejudicial legislation was maintained as clear, provided it had not taken upon itself contract relations inconsistent therewith. In the case of the federal government especially, the changes in the law are likely to affect private interests in a marked and

PONTIAC v. CARTER.

peculiar manner; so much so that a modifiation of those by which the government obtains its revenue may sometimes have the effect to render some branches of trade entirely unprofitable, and perhaps throw considerable classes of persons out of employment. But this is one of the risks to which the business of every member of a political community is subject, and against which he must protect himself by prudence and foresight as best he may.

The particular hardship may be made more manifest, but the principle is not affected by the circumstance that the grade of the street had once before been fixed, and that the plaintiff had built with reference to it. This might be a reason for the exercise of great caution and prudence in determining upon a change, but it could neither deprive the city of the power to establish a new grade, nor could it bring into the case any new elements which could constitute the basis of a right of action. A city cannot even by contract deprive itself of any of its legislative powers; they are conferred upon it to be exercised again and again as long and as often as occasion shall require.—*Gale v. Kalamazoo, 23 Mich., 344.* There is precisely the same reason and the same justification for changing a grade once established, when the public convenience is found to require it, that there was in fixing a grade in the first place where it was then believed it would subserve the public convenience. The circumstances of towns, as they bear upon the propriety or convenience of a grade, must often change with its growth, and what was suitable for a small settlement becomes wholly unsuitable when the town has outgrown the expectation of its founders. And why the owner of a city lot is held to contemplate and guard so far as ·he may against the consequences of one exercise of a particular legislative authority, and not against a second or any subsequent one, is not very apparent, when the power itself is continuous, and the reasons for a second exercise may often be as imperative as those requiring the first. Nor, if he can maintain a suit, is it easy to assign reasons for denying the like remedy to one

whose property is diminished in value by the removal of a public market or town-hall once established in his vicinity, to another quarter of the city, or by permitting a public prison to be located nearer to him, or by repealing an ordinance establishing fire limits, whereby his risks and his insurance premiums are increased, or by any other action inconsistent with that previously taken, whereby he is able to show that he suffers an injury. Nor why, if an action will lie for the wrong, there should not also be injunctions to restrain the commission of the wrong, so that in time the legislation of municipal bodies may come to be under the control of the courts, instead of the men chosen to exercise it. The same principle applies with full force to the case of the change of a county seat, and should give a right of action to every citizen of the place from which it is removed. But an enumeration of the cases to which it would apply is idle, for they are or would be infinite in number.

The injury in all these cases is incidental to an exercise of public authority, which in itself must be assumed to be proper, because it is had by a public body acting within its jurisdiction, and not charged with malice or want of good faith. It must, therefore, be regarded as an injury that every citizen must contemplate as one that with more or less likelihood might happen. When the land was taken for the street, if damages were assessed, they would cover this possible injury, and it could never be known subsequently, that the jury in estimating them did not calculate upon a change in the grade of the proposed street as probable, and attach considerable importance to it in their estimate. It is matter of common observation that much beyond the value of land taken is sometimes given in these cases; not because of any present injury, but because contingencies cannot be fully foreseen. And the rule in such cases is, that all possible damages are covered by the award, except such as may result from an improper or negligent construction of the public work, or from an excess of authority in constructing it. In other words, the award covers all damages result-

ing from the doing in a proper manner whatever the public authorities have the right to do; but it does not cover injuries from negligence, or from trespasses.—*Railroad Co. v. Yeiser, 8 Penn. St., 366; Aldrich v. Railroad Co., 1 Fost., 359; Dearborn v. Railroad Co., 4 Fost., 179; Dodge v. County Commissioners, 3 Met., 380; Brown v. Railroad Co., 5 Gray, 35; Mason v. Railroad Co., 31 Me., 215; Hatch v. Railroad Co., 25 Vt., 49; Bellinger v. Railroad Co., 23 N. Y., 42; Slatten v. Railroad Co., 29 Iowa, 154; Eaton v. Railroad Co., 51 N. H., 504.* And one who gives his land for the purposes of a public way is supposed to contemplate all the same contingencies, and to make the gift on the supposition that the incidental benefits will equal or exceed all possible incidental injuries.

The judgment of the circuit court must be reversed, with costs, and a new trial ordered.

The other Justices concurred.