PATRICK NOLAN *vs.* THE CITY OF NEW BRITAIN.

First Judicial District, Hartford, May Term, 1897.   ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The pollution of a watercourse with the sewage of a city, unless author-
ized by law, constitutes a public nuisance, and renders the city liable in
damages to a lower riparian proprietor who is specially injured thereby.

An amendment of the defendant's charter empowered its common council,
whenever in its opinion the public health or sewerage required it, to
take, occupy and appropriate any stream or part of a stream running
in or through the city, and to straighten, deepen, or lower the same,
and any walls, dams, or other obstruction to the free and healthy flow
of such stream; and prescribed that the cost of the improvement should
be paid for by an assessment upon the parties specially benefited.
*Held* that the Act was limited to a local improvement, and was not in-
tended to authorize the taking of, or injury to, riparian property of
non-residents situated in another town.

In an action to recover damages for fouling a stream, it is entirely irrele-
vant for the defendant to allege that a certain described use of the
stream hitherto made by him, other than that of which the plaintiff
complains, was " a natural, reasonable and proper" use. And, on the
other hand, if by such use the defendant intends the use complained
of, then the answer is insufficient, because it amounts to a general de-
nial.

In such an action a defense of prescription is insufficient unless it fully
covers the use complained of.

No right to commit a public nuisance can be acquired by prescription, nor
to commit the acts which constitute such a nuisance, as against a plain-
tiff who suffers a special injury thereby.

[Argued May 12th—decided November 3d, 1897.]

SUIT for an injunction to restrain the defendant from pol-
luting a certain stream of water by sewage, and for damages,
brought to the Superior Court in Hartford county, and, after
several special defenses had been *pro forma* adjudged insuffi-
cient upon demurrer (*Robinson* and *Hall, Js.*), tried to the
jury before *Hall, J.;* verdict and judgment for the plaintiff
for $2,000 damages, and appeal by the defendant for alleged
errors of the court in sustaining the demurrers of the plain-
tiff.   *No error.*

The complaint was as follows: " 1. The plaintiff is now
and for many years last past has been the owner of a farm in

Newington, with dwelling-houses and other buildings thereon, through which there has during all said time flowed a brook or stream of water known as Piper's Brook, the use of which brook has been very valuable to the plaintiff, and the plaintiff is entitled to the natural flow of said stream in a pure condition and uncontaminated by any injurious substances. 2. The said city of New Britain has, since the first day of October, A. D. 1887, and during all the time to the present, caused to flow into the waters of said brook above the said property of the plaintiff, large quantities of acids, impure matter, sewage, and other noxious and impure substances, so as to render the waters of said brook filthy, noxious, and unclean, and still continues daily so to do, and threatens and intends to continue so to do.    3. By said action of the defendant the plaintiff has been deprived of all use of the waters of said brook for watering his stock, and for all domestic purposes, and has been put to large expense thereby, has been injured in the use of said lands for agricultural and pasturing purposes, has been injuriously affected in his business of selling milk, has been exposed to noxious and unhealthy odors arising from said impure conditions of said brook, and has been deprived of the use of the waters of said brook for ice. 4. The plaintiff has often, and especially on the      day of       , 189 , notified the defendant of this injury, and requested it to desist from such defilement of such stream, but the defendant has, notwithstanding, continued said nuisance to the present time."

The answer consisted of several defenses.    The first was a general denial.    The second was as follows : " 1. In 1872 it became necessary for the city of New Britain to provide a system of public sewerage for the inhabitants thereof, and, in addition to the powers conferred upon it by its original charter, the legislature of this State, in said year, authorized the common council of said city, whenever in its opinion the public health or sewerage should require such action, to take, occupy, and appropriate in such manner as it should from time to time deem expedient, any stream or part of a stream, natural or artificial, running in or through said city, and to

straighten, deepen, or lower the same, or remove or lower any or all walls, dams, or other obstructions to the free and healthy flow of such stream or part of a stream, and, having complied with the provisions of said Act, to go on to complete said public improvement and to do all acts necessary or convenient for that purpose, without further liability in the premises, all of which more fully appears by the provisions of said Act. [The said Act of 1872 is set out at length in the case of *Kellogg* v. *New Britain*, 62 Conn. 236, and it may also be found in Vol. 7, Special Laws, 336.] 2. In 1874 the common council of said city decided that the public health and sewerage of said city required that said stream, called in the complaint 'Piper's Brook,' should be taken, occupied, and appropriated by said city for sewer purposes, and pursuant to the provisions of said Act, said city through its common council, took proceedings in 1874 and 1875 to occupy, straighten, and appropriate said stream for said purposes, and to remove and lower dams and other obstructions therein; that is to say, said common council, on the       day of 1874, appointed a committee to prepare a descriptive survey of the improvement contemplated, to wit, the taking, occupying, and appropriating said stream for sewer purposes, with a careful estimate of the cost of completing the same, and to agree with parties interested as to damages and special benefits on account of such improvement, and said committee made a report to said council of such survey and of the estimated cost of completing said improvement, which was accepted and recorded; and inasmuch as said common council was unable to agree (though it undertook so to do through its said committee) with the parties interested as to the damages or benefits to be assessed on account of such improvement, Dwight W. Pardee, one of the judges of the Supreme Court of Errors, on the application of said city, after causing such notice of the pendency of such application as he deemed just and reasonable, appointed three judicious and disinterested freeholders of the county of Hartford, to wit, Nathaniel Shipman, Charles J. Cole, and Charles Bosworth, to estimate the damages and benefits resulting from said improvement,

and said committee having been duly sworn, and having given notice of the time and place of their meeting for the purpose aforesaid, by publishing the same not less than twice in a newspaper published in said city, met at the time and place designated, to wit, on the 11th day of January, 1875, and on succeeding days by adjournment, in the city court room, in said city, and, having heard all the parties in interest who appeared before them, determined what parties were damaged by said improvement in excess of special benefits, and the amount thereof; also what parties owning or interested in lands, easements, or franchises, within a reasonable distance of said improvement, received special benefit over all damages, and the amount thereof, and also what parties received an equal amount of damage and benefit. And thereafter said committee reported in writing to said Dwight W. Pardee, the judge who appointed them, and he confirmed their report. [Here are set out the notices of the pendency of said application before *Judge Pardee*, the orders of notice issued by said judge, and the notice of the committee of the time and place when and where they would attend to the duties of their appointment. The said notice was directed to nearly one hundred persons by name, " and to all persons interested in the appropriation of said stream." The name of the plaintiff was not included in either of said notices.] At said hearing before said committee, who appraised the damages and assessed the benefits from the taking and appropriation of said stream, the plaintiff in this case, although he was duly notified of all said proceedings, made no claim for damages, and said committee appraised no damages to him, and this defendant avers that by reason of the proceedings aforesaid said stream was lawfully taken and appropriated by said city under the authority aforesaid, and this plaintiff is barred from making any claim for damages for such taking and appropriation. 3. The defendant has not otherwise defiled, polluted, or injured said stream, except by taking, occupying, and appropriating the same as aforesaid. 4. Said action on the part of said city was taken in the utmost good faith, in a proper manner, and in the exercise of proper and

reasonable care, under the lawful authority of this State, for a public purpose, and under the necessities of the public health and sewerage of said city, doing no unnecessary damage to the plaintiff and without protest or objection from him, and at the cost to said city of upwards of one hundred thousand dollars.

" *Third Defense :* 1. Piper's Brook has its source just outside the city of New Britain, and has always flowed through the central portion thereof. The city of New Britain is a manufacturing center, and for more than fifty years the manufactories thereof have used said brook for manufacturing purposes. Said brook was so located that it naturally received the drainage of said city, and long before said city did any of the acts complained of in the complaint, said stream, as the population and manufacturing industries of said city increased, had become the natural receptacle of the drainage and wash of the streets, and the wash, drainage, and sewerage of numerous factories, public buildings, and private residences. By reason of said use, the waters of the said stream long prior to 1874 had become foul, corrupt, and unfit for any domestic use whatever. In 1874 the condition of said stream as it flowed through the city of New Britain, by reason of the said uses which for a period of years had been made thereof, and by reason of the fact that certain dams and obstructions on said stream set back and obstructed the flow of its waters, was a menace to public health, and to remove said stream from its old channel and to promote the more rapid flow of its waters, and to promote better sewer facilities for said city and the inhabitants thereof, said city in the year 1875 constructed a large brick sewer from Main street in said city, near the railroad crossing, down to what was then known as Shepard dam, and into said sewer it diverted and directed said stream. Said city also removed dams and other obstructions to the healthy flow of said stream. Since the construction of said main sewer, which contains said stream, the city has built and connected therewith lateral sewers from the northern and western sections of said city, whose drainage would naturally flow into said

stream, and said lateral sewers find their outlet through said main sewer into said stream. Said city was using said stream in the manner above described when this suit was brought. Said stream flows through a sparsely-settled portion of country, from New Britain to its junction with Park River, in the city of Hartford, and the lands through which it flows are not specially valuable, but are in the main low pasture lands. Long prior to the acts complained of there was not a mill or manufacturing establishment of any kind on said stream below New Britain, and as a source of water power said stream was not sufficient or reliable, either at New Britain or at any point below it. The use which the city of New Britain has made of said stream, as above set forth, is a natural, reasonable, and proper one, and is not inconsistent with the rights of the plaintiff.

" *Fourth Defense :* The defendant at the time of the alleged grievances, and for more than fifteen years prior to the bringing of this suit, had enjoyed as of right without interruption the right of diverting and using said stream for drainage and sewerage purposes for its benefit in substantially the same manner as it now uses the same, and the alleged grievances were uses by the defendant of said right.

" *Fifth Defense :* 1. The defendant, at the time of the alleged grievances, and for more than fifteen years prior to the bringing of this suit, had enjoyed as of right without interruption, and with knowledge of the owner of the fee of the plaintiff's land, the right of diverting and using said stream for drainage and sewerage purposes for its benefit in the same manner as it used the same fifteen years before this action was brought, to wit, on September 20th, 1878, and the alleged grievances were uses by the defendant of the said right. 2. Said use to which the defendant had the said right on said date consisted of causing to flow into the waters of said Piper's Brook, as heretofore alleged in the second and third defenses of this answer, factory and house sewage, drainage, and storm and surface water from the city's streets. 3. The action of the city, as described in paragraph two, has not been appreciably or sensibly enlarged to the prejudice of the

plaintiff during said period of fifteen years next prior to the bringing of this action.

" *Sixth Defense :* 1. The defendant, at the time of the alleged grievances, and for more than fifteen years prior to the bringing of this suit, had enjoyed as of right without interruption, and with knowledge of the owner of the fee of plaintiff's land, the right of diverting and using said stream for drainage and sewerage purposes for its benefit in the same manner as it used the same fifteen years before this action was brought, to wit, on September 20th, 1878, and the alleged grievances were for the most part uses by the defendant of the said right.    2. Paragraph 2 of the fifth defense is made paragraph 2 of this defense.    3. In so far as the use the defendant was making of said stream since October 1st, 1887, was the same as it had a right to use fifteen years before this action was brought, as in paragraph 2 described, to that use the defendant had the right.

" *Seventh Defense :* 1, 2, and 3.    Paragraphs 1, 2, and 3 of the fifth defense are made paragraphs 1, 2, and 3 of this defense.    4. Said stream of water in the year 1878 and long prior thereto was unfit for drinking or domestic purposes, and had been abandoned and given over by the riparian owners to secondary or inferior uses, and the use of said stream as made by the defendant was a proper, reasonable, and natural use, as more particularly set forth in the third defense hereof, so much of which is referred to and made a part of this defense, and the defendant was guilty of no fault or negligence in the said use of said stream."

From the judgment of the Superior Court sustaining demurrers to each of these defenses, the defendant appealed.

*Frank L. Hungerford* and *John H. Kirkham,* for the appellant (defendant).

The legislature intended to authorize the use of Piper Brook for sewer purposes by the city of New Britain.    In 1872, when the Act in question was passed, no other method was in use or known in this State, if indeed in New England, to dispose of the sewage of inland towns and cities,

but by the use of the water-ways of the State. The broad question raised by the demurrer is whether the legislature can confer upon the municipalities of the State, power to use streams for sewer purposes. The legislature has heretofore conferred similar powers upon municipalities, and its right to do so has not, so far as we are aware, been questioned. See Special Acts of 1881, pp. 11, 12, 230, 233, 234; *Merrifield* v. *Worcester*, 110 Mass. 216; *Washburn & Moen Mfg. Co.* v. *Worcester*, 116 id. 458; *Morse* v. *Worcester*, 139 id. 390. The plaintiff was a party to the proceedings instituted by the city under said Act, and was concluded thereby. The defendant is not liable for any defilement of the stream due to the natural drainage of the area described in the complaint and answer. *Rutherford* v. *Village of Holley*, 105 N. Y. 632; *Merrifield* v. *Worcester*, *Washburn & Moen Mfg. Co.* v. *Worcester*, *supra*. The State of Connecticut, by its flowage acts, founded in an extension of the doctrine of eminent domain, has encouraged the erection of mills and manufactories. The court should consider this policy of the State in determining what the common law is, and with what strictness it should be construed, and as to whether the use by the city has been a reasonable and natural use. 1 Wood, Nuisances, § 6. That the use, in order to ripen into a right, need only be continued in *substantially* the same way for the required period, is well settled. 2 Wood, Nuisances, pp. 595, 912, 930, 931; 2 Washburn, Real Prop., p. 327; *Crosby* v. *Bessey*, 49 Me. 539. A prescriptive right to pollute watercourses may, under certain circumstances, be acquired. Angell, Watercourses (6th ed.), p. 351; *Bealy* v. *Shaw*, 6 East, 208; Kent's Comm. § 446; 2 Washburn, Real Prop. (4th ed.) p. 352; Washburn, Easements, 111; 2 Wood, Nuisances (3d ed.), § 704; *Sibley* v. *Ellis*, 11 Gray, 417. It is not claimed by the defendant that any right can be obtained by prescription to commit a public nuisance; and the plaintiff does not allege in his complaint a public nuisance. It is not a *prima facie* public nuisance for a city to use streams of water for sewerage purposes. The question to be determined is the *manner* of its use and the extent of the pollution.

The court is given no light as to how much the sewage is diluted, the size of the stream, the amount of dilution the sewage receives from the advent of other streams after Piper Brook leaves New Britain, etc., etc. The complaint (if a public nuisance is claimed) should set forth particularly the character of the nuisance, as well as the character of the injury that will result therefrom. *Adams* v. *Michael*, 38 Ind. 125; 2 Wood, Nuisances, §§ 796, 797, 798; 1 id. pp. 34, 35 and § 18; *Thebaut* v. *Kanava*, 11 Fla. 143; *Goldsmid* v. *Tunbridge Wells Improvement Com'rs*, L. R. 1 Eq. Cas. 161; *Crossley* v. *Lightowler*, 3 id. 279; *Baxendale* v. *Murray*, L. R. 2 Ch. App. 790.

*Charles E. Perkins* and *Arthur Perkins*, for the appellee (plaintiff).

It is obvious that all that the legislature authorized the city to do, was to straighten and deepen the stream where it flowed through the city, remove all obstructions to its healthy flow, and enlarge any culverts which interrupted such flow. There is not a word about using this stream as a sewer; on the contrary, the object to be attained is to prevent the accumulation of stagnant water, and enable the stream to have a " free and healthy " flow where it passes through the city. It is a well-settled rule of construction that no Act of the legislature authorizing any act to be done, is to be construed as authorizing it to be done in such a manner as to cause a nuisance, or to injure others. *Cogswell* v. *R. R. Co.*, 103 N. Y. 10; *Baltimore R. R.* v. *Baptist Church*, 108 U. S. 317; *Edmondson* v. *City of Moberly*, 98 Mo. 523; *Sawyer* v. *Davis*, 136 Mass. 245; *Propr's of Locks* v. *Lowell*, 7 Gray, 223; *Haskell* v. *New Bedford*, 108 Mass. 208; *Bacon* v. *Boston*, 154 id. 100. The decisions in this State are substantially to the same effect. *Hooker* v. *R. R. Co.*, 14 Conn. 186; *Danbury R. R. Co.* v. *Norwalk*, 37 id. 120; *Mootry* v. *Danbury*, 45 id. 556. The Massachusetts cases against the city of Worcester, relied upon by the defendant, rest upon legislative authority of a very different character from that granted the defendant in this case; and therefore are inapplicable. But even if the

authority claimed could be found in the Act, the defendant does not allege that any attempt was ever made to agree with the plaintiff as to his damage, or that he was ever notified of the committee's proceedings, or made a party to them in any way.    It is no defense that the acts complained of were necessary to preserve the public health of the city; that they were done at great expense, in a proper and reasonable manner, and so as to cause the plaintiff no unnecessary damage.    Wood, Nuisances (1st ed.), §§ 667, 684; 2 Dill. Mun. Corp. § 1048; *Harper v. Milwaukee*, 30 Wis. 365; *Noonan v. Albany*, 79 N. Y. 470, 476; *Chapman v. Rochester*, 110 id. 273, 276; *Winn v. Rutland*, 52 Vt. 481; *Ashley v. Port Huron*, 35 Mich. 296; *O'Brien v. St. Paul*, 18 Minn. 176; *Haskell v. New Bedford*, 108 Mass. 208; *Attorney-General v. Leeds*, L. R. 5 Ch. App. 583.    The defendant alleges that it used the stream in "a reasonable and proper manner," but it hardly needs authority or argument to meet such a claim. It is inconsistent with the well-settled right of riparian proprietors to have the water unpolluted.    *Gladfelter v. Walter*, 40 Md. 1; *Com. v. Perry*, 139 Mass. 198.    The third line of defense relied on by the defendant is, in general, that before the sewer was built the stream had been so used by others as a deposit of sewage and other matters, that it had become "impure and wholly unfit for domestic use."    It is obvious that this paragraph sets up no sufficient defense.    *Newark Board v. Passaic*, 45 N. J. Eq. 393; *Sherman v. Fall River Works*, 5 Allen, 213; *Holtzman v. Bleaching Co.*, 14 N. J. Eq. 335; *Gladfelter v. Walter*, 40 Md. 1; Wood on Nuisances, § 680, and cases cited; Gould on Waters, § 546, and cases cited; *Crossley v. Lightowler*, L. R. 3 Eq. Cas. 279; *Barnett v. Cemetery Association*, 159 Ill. 385.    Turning the whole sewage of a city into a small brook, like Piper's Brook, is such a nuisance that no adverse user, however long continued, can give any city a right to continue it.    Wood, Nuisances, §§ 698, 724; Gen. Stats. § 3256; *Mills v. Hall*, 9 Wend. 316; *Com. v. Upton*, 6 Gray, 476; *Bowen v. Wendt*, 103 Cal. 236; *Brookline v. Mackintosh*, 133 Mass. 215; *Woodruff v. Mining Co.*, 18 Fed. Rep. 753, 788.

NOVEMBER, 1897.

ANDREWS, C. J.   The use of Piper's Brook which the complaint charges that the defendant has made, unless there is a lawful warrant therefor, causes a public nuisance.  Anything not warranted by law, which annoys and disturbs one in the use of his property, rendering its ordinary use or occupation physically uncomfortable to him, is a nuisance.  *Baltimore, etc., R. R.* v. *Fifth Baptist Church*, 108 U. S. 317.  If the annoyance is such as to materially interfere with the ordinary comfort of human existence, it is a nuisance.  LORD ROMILLY, in *Crump* v. *Lambert*, L. R. 3 Eq. 409–413.  And if the annoyance is one that is common to the public generally, then it is a public nuisance.  Stephen's Dig., Cr. Law, 120.   The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights.  A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence.  *Westcott* v. *Middleton*, 43 N. J. Eq. 478; Wood on Nuisances, 76.  That it would be a public nuisance to render the water of a stream so impure that it could not be used for domestic purposes, or for the watering of cattle, and so that it gave off noxious and unhealthy odors, is hardly open to question ; *Chapman* v. *Rochester*, 110 N. Y. 273; for the reason that these causes would injuriously affect every riparian owner along the whole length of the stream and every person who lived near it.  If a municipal corporation, in the absence of a legal right so to do, causes sewage to pollute a watercourse, to the use of which a lower owner through whose premises the watercourse flows is entitled, it is guilty of a nuisance for which damages may be recovered.  *Inman* v. *Tripp*, 11 R. I. 520; *N. Y. Central, etc., R. R.* v. *Rochester*, 127 N. Y. 591; *Attorney-General* v. *Leeds Corporation*, L. R. 5 Ch. App. 583; Gould on Waters, § 545; Dillon on Mun. Corp. (4th ed.) § 1047; *Byrnes* v. *Cohoes*, 67 N. Y. 204; *Seifert* v. *Brooklyn*, 101 id. 136; *Franklin Wharf Co.* v. *Portland*, 67 Me. 48; *Morse* v. *Worcester*, 139 Mass. 389.

The ground of the plaintiff's claim is that he has received a special injury from a public nuisance which the defendant has caused.  A private action is maintainable for a public nui-

sance, by one who suffers therefrom some particular loss or damage beyond that suffered by him in common with all others affected by the nuisance. *Atwood* v. *Partree,* 56 Conn. 80; *Wheeler* v. *Bedford,* 54 id. 244; 16 Amer. & Eng. Ency. of Law, 971.

This appeal brings up the six defenses (two to seven inclusive) pleaded by the defendant. Each of these admits—by not denying—the use of the stream as charged in the complaint; and each purports to be an answer to the whole complaint, by setting forth a lawful warrant for using the stream as is charged. To each of these defenses a demurrer was interposed, and the demurrer to each was sustained. The second defense depends on the Act of the legislature of 1872, mentioned in the statement of the case. It counts on that Act, and then sets forth with some particularity the proceedings of the common council of the city of New Britain taken in pursuance of its provisions; and then avers " that by reason of the proceedings aforesaid, said stream was lawfully taken and appropriated by said city under the authority aforesaid, and this plaintiff is barred from making any claim for damages for such taking and appropriation."

In considering this defense in its application to the complaint, it should be kept in mind that the plaintiff is not an inhabitant of New Britain, and that his farm, through which he alleges the polluted stream flows, is not within the territorial limits of that municipality. The said Act authorizes and points out the steps to be taken in order to complete within said city a valuable public improvement, to be paid for by that species of taxation known as the assessment of damages and benefits. It empowers the common council " whenever in their opinion the public health or sewerage shall require such action, to take, occupy, and appropriate, in such manner as they shall, from time to time, deem expedient, any stream, or part of a stream, natural or artificial, running in or through said city, and to straighten, deepen, or lower the same, or lower or remove any or all walls, dams, or other obstructions to the free and healthy flow of such stream or part of a stream, or enlarge or cause to be enlarged or low-

ered, any or all culverts, which at any season of the year cause the accumulation of stagnant water, or interrupt in any manner the free and healthy flow of any part of such stream." This is all of the Act which grants power to the defendant to interfere with Piper's Brook. And if this language does not give the defendant a lawful warrant to do the things charged in the complaint, then the defendant has no such lawful warrant. The other parts of the Act are conversant with the procedure which the common council of the city is to follow whenever they "take action under the foregoing power." That is to say : "They shall appoint a committee to prepare a descriptive survey of the improvement contemplated, with a careful estimate of the cost of completing the same, and to agree with the parties interested as to damages and special benefits on account of such improvement ; and the report of such survey and estimate having been accepted and recorded, and such agreement having been ratified, and the sums agreed upon as damages having been paid to the parties entitled thereto, or deposited to their credit in the city treasury, said city may go on to the completion of said improvement," etc. Then the Act mentions the steps the city is to pursue in respect to persons with whom the common council was unable to agree as to damages and benefits, to the end that the damages accruing to such persons should be ascertained,—"and said damages being paid or deposited as before provided, said city may go on to complete said public improvement and do all acts necessary or convenient for that purpose, without further liability in the premises."

This defense states that the common council did appoint a committee to make such descriptive survey, etc., as is provided in said Act; that said committee made a report, that it failed to agree with the parties interested in the damages and benefits, and that therefore an application was made to a judge of the Supreme Court for the appointment of a committee " to estimate the damages and benefits resulting from said improvement." And the defense details with elaborate fullness the notice given by said judge and the said committee. But it nowhere sets forth the " descriptive survey," nor the

" careful estimate " made by the committee appointed by the
common council, nor is the report of the committee given
so that it may be known whether or not said committee at-
tempted to agree with the plaintiff; we are therefore com-
pelled to believe that said descriptive survey and careful
estimate did not include any reference to the plaintiff or to
the plaintiff's property, and that there was no attempt to agree
with him as to the damages he might suffer by reason of the
fouling of the water in said brook. The notices made a part
of the defense show that they were not directed to or served
on the plaintiff. These omissions point unerringly to one
conclusion : The common council of New Britain, in 1874,
understood the said Act of 1872 to be—what it in fact was—
an authority to them to make a local improvement. That
Act of the legislature gave the council no authority to do
anything, or to affect any property, outside the city limits,
or to affect any person not an inhabitant or property owner
within those limits. The common council was a local board.
It had no power or jurisdiction outside the city, unless such
was specially given it by the legislature. The legislature
had given the council no such power, and so it did not at-
tempt any such jurisdiction. It did not attempt to affect the
plaintiff's right in Piper's Brook.

If it had been the intent of the legislature, by the Act of
1872, to authorize the common council of the city of New
Britain to take, or to affect, any lands outside of the city
limits, it is certain there would have been in the Act some
provision for the ascertainment of damages to be paid to the
landowner. The right of the plaintiff to have the water of
Piper's Brook flow through his land as it has been accustomed
to flow (*i. e.*, pure and uncontaminated), " is not an easement
or appurtenance ; but it is inseparably annexed to the soil."
*Wadsworth* v. *Tillotson*, 15 Conn. 366, 373. To deprive the
plaintiff of that part of his soil for the purposes named in
that Act, would be the taking of private property for public
use, and the plaintiff would be entitled to have just compen-
sation. A " taking," under the right of eminent domain,
means the exclusion of the owner from use and possession

of the property taken, and the actual assumption of the possession by the party authorized to take, and there would naturally be some proceeding, in its nature judicial, for the finding of the damages thereby occasioned. *Woodruff* v. *Catlin*, 54 Conn. 277, 297. Such proceeding is essential to ascertain the just compensation which must be made in order to complete the taking. *N. Y., N. H. & H. R. R.* v. *Long*, 69 Conn. 424; Cooley on Const. Lim. (6th ed.) 695. So far as concerns damages for taking or injuring lands outside the city limits, it can hardly be said that there is anything in the Act of 1872 providing for any such process as this. The General Assembly had in view a local improvement to be carried out by local authorities, and paid for in large part, if not altogether, by the local assessments on the lands specially benefited. Obligations and liens created by assessments of this kind do not proceed from the right of eminent domain, but from the power of taxation. It is not to be presumed, in the absence of plain provision to that effect, that the Act of 1872 was intended to authorize any proceedings conducted by the city of New Britain for its own benefit which should include a tax laid in its behalf and payable to its treasurer, upon lands outside of its territorial limits. But there is nothing in the Act to indicate that the area over which the right to appropriate land before payment of just compensation extends, was wider than that within which benefits might be assessed to raise the funds with which to pay for the lands taken. The only taxing district suggested by the Act, is the city of New Britain. The only taxing officers are the officers of that city. For these reasons we think a person resident outside the city, as was the plaintiff, and not a property owner therein, whether he had notice or did not have notice, could not be bound by any action taken by the common council of New Britain under the Act of 1872. That Act applied only to New Britain. Its language indicates that it was not intended to be operative on persons or property anywhere except within the territory of that municipality. *Edmondson* v. *Moberly*, 98 Mo. 523.

The third defense states a certain use of Piper's Brook

which the defendant has made, and then avers that " the use which the city of New Britain has made of said stream, as above set forth, is a natural, reasonable, and proper one, and is not inconsistent with the rights of the plaintiff." It is not averred that the use of said stream so set forth is the same use of which the plaintiff complains. We suppose it is intended to be a different one. If we are right in the supposition, then the demurrer was properly sustained. It is no answer to the plaintiff's complaint to aver that a use of the stream other than the one of which he complains, is a natural, reasonable, and proper one, and not inconsistent with the plaintiff's rights. Whether such other use is or is not a natural, reasonable, and proper one, is entirely irrelevant.

If, on the other hand, the use set forth in this defense is intended to be the very same use complained of by the plaintiff, then the defense is insufficient because it amounts to nothing else than a general denial.

The fourth, fifth and sixth defenses, while differing as to the forms of expression, all rest on one ground: that the defendant has acquired the right to use the said stream in the manner it does, by prescription.

The fourth defense is insufficient because it is not a complete answer to the complaint. If the defendant had acquired, by prescription, the right to a use of the water of Piper's Brook which was no more than substantially the same as the use of that stream of which the plaintiff complained, then it had not acquired the right to a use which barred the plaintiff a recovery in this action. He was still entitled to recover for the damage done him by the difference between the use acquired and the use actually practiced.

The fifth defense is insufficient for the same reason. It does not answer the whole complaint. The prescription alleged includes not the whole use complained of, but only the most part of it. The plaintiff is entitled to recover for the remaining part.

The sixth defense presents the question of prescription. We have already indicated our opinion that the use of Piper's Brook of which the plaintiff complains, is a public nuisance.

We suppose the law to be so that a public nuisance cannot be prescribed for. No length of time can legitimate, or enable a party to prescribe for, a public nuisance. *People* v. *Cunningham*, 1 Denio, 524; *Mills* v. *Hall*, 9 Wend. 315; *Veazie* v. *Dwinel*, 50 Me. 479, 490; *Commonwealth* v. *Upton*, 6 Gray, 471, 476; Wood on Nuisances, 722; 19 Amer. & Eng. Ency. of Law, 30. When an action is brought by a party who has suffered a special injury in consequence of a public nuisance, a prescriptive right to do the acts complained of cannot be maintained against him. *Bowen* v. *Wendt*, 103 Cal. 236; *People* v. *Gold Run, etc., Mining Co.*, 66 Cal. 138; *Boston Rolling Mills* v. *Cambridge*, 117 Mass. 396; *O'Brien* v. *St. Paul*, 18 Minn. 176; Cooley on Torts, 614. There is no occasion to discuss this defense further, because the defendant's counsel in their brief expressly disclaim that any right can be obtained by prescription to commit such a nuisance.

The seventh defense is precisely like the third, and is defective for the same reason.

There is no error.

In this opinion the other judges concurred.