## MILLER *v.* CITY OF KALAMAZOO.[1]

MUNICIPAL CORPORATIONS—STREET GRADE—CHANGE—POWER TO
CONTRACT—WATERWORKS.

With respect to changing the grade of streets, a city exercises
a legislative power which it cannot bargain away, and hence
a city cannot be liable in damages to a landowner for the
freezing of service pipes connected with the city waterworks,
caused by exposure consequent on lowering the grade of the
street, on the theory that by contracting to supply water
through the pipes the city impliedly agreed not to lower the
grade and thus freeze them.

Error to Kalamazoo; Adams, J. Submitted May 3,
1905. (Docket No. 135.) Decided June 8, 1905.

Case by Mary C. Miller against the city of Kalamazoo
for damages to a water pipe caused by freezing. There
was judgment for plaintiff, and defendant brings error.
Reversed.

*Harry C. Howard* (*William R. Fox*, of counsel), for
appellant.

*Osborn & Mills*, for appellee.

CARPENTER, J. In the court below, plaintiff recovered
damages; the same being the amount of money expended
by her in repairing a water pipe frozen in consequence of
the alleged negligence of defendant. The case made by
the plaintiff may be briefly stated as follows: Plaintiff
owns a residence in the defendant city. Defendant owns
and maintains a waterworks system. Its main passed on
the opposite side of the street upon which plaintiff resided.
Plaintiff owns the service pipe connecting with said main
and running to her residence. Defendant lowered the

[1] Rehearing denied October 2, 1905.

grade of said street, and, in consequence thereof, plaintiff's service pipe was frozen, and the damages for which she brings suit were thereby occasioned.

Had plaintiff a right of action? This is the important question presented on this record. Defendant clearly had a right to lower the grade of its street (see *City of Pontiac* v. *Carter*, 32 Mich. 164), without thereby incurring any liability to plaintiff, unless such liability arose from the grant of the right of the plaintiff to connect her service pipe with the main pipe in the street. The position of plaintiff is shown by the following statement taken from the brief of her counsel:

" No doubt the city had the right to change the grade of one of its streets, but when a city goes into the business of selling water, and requires its customers to furnish the water pipes from which the water passes from its mains, it cannot negligently expose those pipes to frost, and exempt itself from legal liability for damages to its customers in consequence of its negligent acts."

The assumption that defendant was negligent presupposes a duty owed by it to the plaintiff not to lower the grade of the street. Was there such a duty? There was not, unless it may be said that it was created by the contract made between plaintiff and defendant. The ground upon which we have held that a municipality may change the grade of its street without incurring a liability to abutting owners is that in changing said grade the municipality exercises a legislative power. See *City of Pontiac* v. *Carter*, 32 Mich. 164; *Larkin* v. *County of Saginaw*, 11 Mich. 88; *McCutcheon* v. *Village of Homer*, 43 Mich. 483; *Burford* v. *City of Grand Rapids*, 53 Mich. 98. It is fatal to plaintiff's contention that a municipality cannot bargain away this power. Says Judge COOLEY in his Constitutional Limitations (6th Ed.), p. 250, in speaking of municipal bodies:

" Such a body has no power, even by contract, to control and embarrass its legislative powers and duties, * * * In this way the legislative powers es-

sential to the comfort and preservation of populous communities might be frittered away into perfect insignificance. To allow rights to be thus parceled out and secured beyond control would fix a principle by which our cities and villages might be broken up. Nuisances might and undoubtedly would be multiplied to an intolerable extent. And on the same ground it is held that a municipal corporation, having power to establish, make, grade, and improve streets, does not, by once establishing the grade, preclude itself from changing it as the public needs or interest may seem to require, notwithstanding the incidental injury which must result to those individuals who have erected buildings with reference to the first grade. So a corporation having power under the charter to establish and regulate streets cannot, under this authority, without explicit legislative consent, permit individuals to lay down a railway in one of its streets, and confer privileges exclusive in their character and designed to be perpetual in duration."

See, also, *Jamaica Pond Aqueduct Corp.* v. *Inhabitants of Brookline*, 121 Mass. 5; *City of Brenham* v. *Brenham Water Co.*, 67 Tex. 542; *Columbus Gas Light & Coke Co.* v. *City of Columbus*, 50 Ohio St. 65 (19 L. R. A. 510). It is true that in the case at bar plaintiff is not endeavoring to prevent the municipality from changing the grade of its street. She is merely seeking damages (as was plaintiff in *City of Pontiac* v. *Carter*, supra) because it did change such grade. This distinction is unimportant. The same principle which prevents the city from contracting not to change its grade obviously exempts it from liability for damages for breach of such contract. Plaintiff can maintain her action only upon the assumption that the city had power to make such contract. As it had not that power, plaintiff has no cause of action.

Judgment should therefore be reversed, and no new trial ordered.

MOORE, C. J., and MCALVAY, BLAIR, and HOOKER, JJ., concurred.