KILTS *v.* BOARD OF SUPERVISORS OF KENT COUNTY.

1. NEGLIGENCE—INDEPENDENT CONTRACTOR—BUILDING CONTRACT
—NUISANCE.

Contractors constructing a water tower at a county poor farm,
under an agreement with the board of supervisors, are not
liable for injuries to an employé of the contractors, caused
by a collapse of the structure, from the negligence of sub-
contractors who furnished insufficient "I" beams to support
it, under plans which the board of supervisors have approved,
since the neglect was that of independent contractors.

2. MUNICIPAL CORPORATIONS — GOVERNMENTAL AGENCY — BOARDS
OF SUPERVISORS—PUBLIC BUILDINGS AND WORKS—COUNTIES.

A board of supervisors in constructing a water system for the
poor farm of a county perform a governmental function, in
the execution of which they are exempt from liability for
negligent construction.

3. NUISANCE—NEGLIGENCE—CONTRACTORS — MUNICIPAL CORPORA-
TIONS.

A nuisance involves not only a defect but threatening or im-
pending danger to the public, or, if a private nuisance, to
the property rights or health of persons sustaining peculiar
relations to the same.

4. SAME—DEFINITION—NEGLIGENCE.

A nuisance is a use made by one of his own property, which
works an irreparable injury to another's property, or which
deprives his neighbor of the reasonable or comfortable en-
joyment and use of his property, or which violates the un-
written but accepted law of decency, or which endangers
or renders insecure the life and health of his neighbor.

5. SAME—MASTER AND SERVANT.

Neither the board of supervisors nor the principal contractor
are liable to the employé killed by a collapse of a water
tower, as for a nuisance, which they owed him a duty not to
construct.

Error to Kent; Perkins, J.   Submitted June 15, 1910.
(Docket No. 63.)   Decided September 27, 1910.

Case by Lena M. Kilts, administratrix of the estate of James L. Kilts, deceased, against the board of supervisors of Kent county, Frank E. Stevens and Julius A. Ziesse, copartners as the Phœnix Sprinkling & Heating Company, and the Grand Rapids Bridge Company for the negligent killing of plaintiff's intestate. A judgment for plaintiff against the Grand Rapids Bridge Company alone is reviewed by her on writ of error. Affirmed.

*Holmes & Holmes* and *M. A. Nichols,* for appellant.

*William B. Brown* and *Hyde, Earle & Thornton,* for appellees.

Hooker, J. The plaintiff, as administratrix of the estate of James L. Kilts, her husband, brought this action in the circuit court for the county of Kent to recover damages for the injury and subsequent death of her husband through the alleged negligence of the defendants. The accident occurred by reason of the giving way of a platform at the top of a water tower at the county farm of Kent county, due to insufficient support; it being conceded that the "I" beams used as joists under the platform were too light for the support of so heavy a load as was imposed upon them. Deceased and a fellow workman who were at work on the covering for the tank at the time of the collapse of the structure fell a distance of 80 feet, and both died from the fall.

The action is brought against the board of supervisors who authorized the erection of the tower and tank to furnish water for the poorhouse, boilers, closets, etc.; Stevens & Ziesse, copartners, who contracted with the board to erect the tower, etc., and the Grand Rapids Bridge Company, a corporation, being the subcontractor who furnished material and constructed the tower according to plans furnished by itself and acceptable to the board of supervisors. The bridge company did not appear, and its default was entered. Stevens & Ziesse defended upon the ground that the bridge company was an

independent contractor, and therefore they were not liable, while the board of supervisors joined to that ground of defense the further one that the erection of the tower was ordered by them in the capacity of a governmental agency. The learned trial judge directed a verdict for Stevens & Ziesse and the board upon the grounds stated, and allowed the jury to render a verdict against the bridge company, upon which judgment was rendered for $5,000 against the bridge company, and the plaintiff has appealed.

We understand that the appeal relates only to these defendants in whose favor a verdict was directed. That the bridge company was really the one at fault for the defect in the joists which caused the accident is indisputable on this record, and it was primarily liable, as it seems to have conceded by its default. Treating the case as one of negligence, it would seem that the contention of Stevens & Ziesse cannot be successfully resisted. The bridge company was clearly an independent contractor, and Stevens & Ziesse are not liable for its negligence.

The board of supervisors represented the county of Kent, and in making required or necessary provision for the poor performed a governmental function. See 4 Current Law, p. 721. The provision of necessary water for drinking, culinary, and sewer purposes, and as a protection against fire, is well within their implied power, if, indeed, they rest only in implication. Counsel for the county cite many cases from other, as well as our own, courts, sustaining this principle, and justifying its application to this case. We avail ourselves of the opportunity to collect from his brief, and insert in this opinion for convenient reference a list of our own cases upon this subject. *City of Detroit* v. *Blackeby*, 21 Mich. 84 (4 Am. Rep. 450); *Gale* v. *Village of Kalamazoo*, 23 Mich. 344 (9 Am. Rep. 80); *O'Leary* v. *Board of Fire & Water Com'rs of Marquette*, 79 Mich. 286 (44 N. W. 608, 7 L. R. A. 170, 19 Am. St. Rep. 169); *Gilboy* v. *City of Detroit*, 115 Mich. 121 (73 N. W. 128); *Shipman* v. *Live-*

*Stock Com'n*, 115 Mich. 488 (73 N. W. 817); *Murray* v.
*Village of Grass Lake*, 125 Mich. 2 (83 N. W. 995);
*Nicholson* v. *City of Detroit*, 129 Mich. 246 (88 N. W.
695, 56 L. R. A. 601); *Brink* v. *City of Grand Rapids*,
144 Mich. 472 (108 N. W. 430); *Ashley* v. *City of Port
Huron*, 35 Mich. 296 (24 Am. Rep. 552); *Lenderink* v.
*Village of Rockford*, 135 Mich. 531 (98 N. W. 4); *Row-
land* v. *Kalamazoo Sup'ts of Poor*, 49 Mich. 553 (14 N.
W. 494); *City of Pontiac* v. *Carter*, 32 Mich. 164;
*Webster* v. *County of Hillsdale*, 99 Mich. 259 (58 N.
W. 317); *Larkin* v. *County of Saginaw*, 11 Mich. 88
(82 Am. Dec. 63); *Miller* v. *City of Kalamazoo*, 140
Mich. 494 (103 N. W. 845); *Hines* v. *City of Charlotte*,
72 Mich. 278 (40 N. W. 333, 1 L. R. A. 844); *Sheldon* v.
*Village of Kalamazoo*, 24 Mich. 383; *Buskirk* v. *Strick-
land*, 47 Mich. 389 (11 N. W. 210); *City of Detroit* v.
*Beckman*, 34 Mich. 125 (22 Am. Rep. 507); *Barron* v.
*City of Detroit*, 94 Mich. 601 (54 N. W. 273, 19 L. R.
A. 452, 34 Am. St. Rep. 366).  We are of the opinion,
therefore, that neither of these two defendants is liable
for the negligent injury of deceased.

Counsel for the plaintiff ask us to hold these defendants
liable upon another ground, *i. e.*, that the tower was a nui-
sance, and therefore all the defendants are liable for the
injury, upon the theory that all who have to do with cre-
ating or maintaining a nuisance are liable for injuries re-
sulting therefrom.

Counsel make an ingenious and plausible argument
that this tower and tank constituted a nuisance, for which
all concerned in its erection are responsible, and each and
every one of them liable for damages resulting therefrom,
whether it was due to negligence or not, under an alleged
general rule applicable to nuisances.  We think this claim,
if sustained, would be an extension of the law of nuisance.
It is undeniable that when one causes to be erected a
building upon his premises so near the street that snow
may slide, or its defective walls fall, upon a passerby,
upon the highway, it is a public nuisance, and whether

the defect was due to the negligence of the owner who may have had no part in the erection of the building or not is unimportant, for the reason that he was bound not to maintain or permit a public nuisance to exist on his premises. And if, instead of being contiguous to a highway, the defective structure was adjacent to an adjoining proprietor's land so that it was a menace to his property, or to his person in the use of his land, it would be a private nuisance and a breach of the owner's duty to maintain it. In either case he would be liable for injuries received from a fall of the snow or building, not necessarily because he was negligent in erecting or maintaining it, but because of his wrongful invasion of the rights of the public or his neighbor, liability for which does not depend upon motive. Neither need wait until serious damage has resulted, but the threatened danger may be averted by a proceeding to abate the existing nuisance.

But a private person may use his own premises as he will, so long as he does no injury to the public, or to the property and rights of a private person, and one may erect a weak structure upon his premises, so far from the street and other's property, that persons not entering upon his premises can be in no danger from it. It is true that trespassers or licensees or persons residing upon the farm may suffer injury, and they may be entitled to redress in many cases on the ground of negligence, but we know of no adjudicated cases that hold that such persons have a right to ask the abatement of such structures, which are in no way related to property rights of theirs. They are volunteers upon the premises, with certain rights of protection, to be sure, but not with the right to ask the owner to remove structures that they may think dangerous. The enunciation of the doctrine contended for would be attended by far-reaching results, and practically make every man the insurer of his help, his guests, and even strangers rightfully upon the premises. Practically it would have a

tendency to eliminate the whole doctrine of negligence in large classes of cases, for juries would be asked to find that buildings, machines, walks, roads, and all other articles or structures were nuisances if in any way defective or out of repair, because dangerous to those approaching them. The doctrine of contributory negligence would go with that of negligence if counsel's contention is correct.

We are of the opinion that a nuisance involves, not only a defect, but threatening or impending danger to the public, or, if a private nuisance, to the property rights or health of persons sustaining peculiar relations to the same, and that the doctrine should be confined to such cases. While adjudicated cases have been so variable that courts generally regard a technical and comprehensive definition difficult if not impracticable, the trend of opinion seems to be that the circumstances must be examined with a view to ascertaining *whether the alleged condition is one so serious as to interfere with the comfort of life and enjoyment of property, or so threatening as to constitute an impending danger to persons in the enjoyment of their legitimate rights.* The following quotations indicate this rule:

"Anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights." *Village of Cardington* v. *Fredericks,* 46 Ohio St. 442 (21 N. E. 766).

"Injury to property, with reference to its reasonable and ordinary use, by continuous hurtful acts, constituted a nuisance undoubtedly." *Sparhawk* v. *Railway Co.,* 54 Pa. 401, 421, per Thompson, J.

"A 'nuisance' is a term for all practices, avocations, erections, establishments, etc., against which courts will give relief, although they are not intrinsically criminal, because of their tendency to create annoyance, ill health, or inconvenience." *Gifford* v. *Hulett,* 62 Vt. 342, 346 (19 Atl. 231), per Taft, J.    (A case of a barn.)

"The real question in all the cases is the question of fact, viz., whether the annoyance is such as materially to interfere with the ordinary comfort of human existence." *Crump* v. *Lambert,* L. R. 3 Eq. Cas. 409, 413, per Lord Romily, M. R.

"Anything not warranted by law which annoys and disturbs one in the use of his property, rendering its ordinary use and occupation uncomfortable to him, is a nuisance. If the annoyance is such as to materially interfere with the ordinary comfort of human existence, it is a nuisance." *Nolan* v. *City of New Britain*, 69 Conn. 668, 678 (38 Atl. 706), per Andrews, C. J.

"Nuisances to one's dwelling house are all acts done by another which render the enjoyment of life within the house uncomfortable, whether it be by infecting the air with noisome smells, or with gases injurious to health." *Cropsey* v. *Murphy*, 1 Hilt. (N. Y.) 126, 127, per Brady, J.

"It is not necessary that the smell should be unwholesome. It is enough if it renders the enjoyment of life and property uncomfortable." *Rex* v. *White*, 1 Burr. 333, 337, per Lord Mansfield.

Blackstone defines "private nuisance" to be:

"Anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another." 3 Black. Commentaries, p. *216.

In *State* v. *Beardsley*, 108 Iowa, 396 (79 N. W. 138), it was said:

"A nuisance is the unlawful use of one's own property, working an injury to the right of another or of the public, and producing such inconvenience, discomfort, or hurt that the law will presume a consequent damage."

See, also, definition in Joyce on Nuisances, p. 18.

"A use made by one of his own property which works an irreparable injury to another's property, or which deprives his neighbor of the reasonable and comfortable enjoyment and use of his property, or which violates the unwritten but accepted law of decency, or which endangers or renders insecure the life and health of his neighbor, is a nuisance. So every enjoyment by one of his own property which conflicts with the rights of another in an essential degree is a nuisance. Another definition is: A private nuisance is 'where one so uses his property as to damage another's or disturb his quiet enjoyment of it.' A nuisance is also defined as 'a tort.' It is 'the use of one's own property which involves injury to the property, or

other right, or interest of the neighborhood.' So where anything is constructed on a person's premises, which of itself, or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property, it is a nuisance."

Running through all of these is the element of a wrongful, continuing, impending danger to the lives, limbs, or health of the public, or to the legitimate property or personal rights of private persons peculiarly subject to the danger. The defendants in this case owed no duty to the deceased not to erect or maintain this structure. They committed no wrong against him in doing so, for they had no relations with him and he had no right upon the premises up to the time that he was employed to cover the tank. His rights under such employment, such as the right to a safe place to work, and to warning of danger, are to be measured by the ordinary rules of negligence cases, and grow out of his contract of employment, whether the tower was a private nuisance as to other persons or not. In this cause counsel's contention would subject every person who had anything to do with the authorizing, planning, or erecting of this tower and tank to liability for the injury to the intestate.

We fail to find adjudicated cases sustaining such a rule, and are therefore constrained to affirm the judgment.

OSTRANDER, MOORE, McALVAY, and BROOKE, JJ., concurred.