RUDOLF FEUDL *vs*. THE CITY OF NEW BRITAIN.

First Judicial District, Hartford, January Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A city is liable for discharging offensive sewage from its streets and catch-basins into a natural watercourse whence it is carried to the land of a lower riparian proprietor causing unhealthy conditions and subjecting him to annoyance and discomfort; and the fact that others may have contributed to the result does not relieve the city from liability.

As a riparian owner, a city has no right to intercept and collect surface-water drainage which in its natural course would have entered the stream below the premises of another riparian proprietor, and by means of highway drains and catch-basins discharge such water, together with the surface drainage of the rest of the watershed, into the stream above his premises; and if the city does this and the land of such proprietor is flooded and injured as a result, the municipality is liable for such portion of the total damage as is

found to have been caused by its wrongful act, notwithstanding other owners still farther below may have contributed to the injury by filling in their land, and thus obstructing and narrowing the original channel of the stream and rendering it incapable of carrying off the augmented volume of water as it had done for several years after the city had completed its sewage system.

A municipality which has sought and obtained legislative authority to construct and maintain a sewer system and to condemn property therefor, is not, while using plaintiff's property which it had not condemned, engaged in the performance of a governmental duty.

Argued January 8th—decided March 19th, 1914.

ACTION to restrain the defendant from maintaining an open terminal of its storm or surface-water sewer just above the premises of the plaintiff, and for damages to his land, brought to the Superior Court in Hartford County and tried to the jury before *Gager, J.;* the court directed a verdict for the defendant, from the judgment upon which the plaintiff appealed. *Error and new trial ordered.*

There was evidence from which the jury might have found the following facts:—

The city of New Britain has a double sewer system. The house sewage is conducted to a distant filtration plant, and the storm and surface sewage into neighboring watercourses. The surface drainage from the streets in the district near the plaintiff's land is collected by a system of sewers and discharged through a culvert into the bed of a small natural watercourse at a point a little above the plaintiff's land. There are direct connections into these sewers from the roofs of private houses, and surface water from privately owned land also finds its way into them. All of the watershed so drained is naturally tributary to the stream in question, but a large part of it formerly drained into the stream at points below the plaintiff's land. The defendant's sewer system greatly accelerated the run-off from the watershed, but the natural channel of the stream from

the Belden Street culvert for some distance below the plaintiff's land was—when the defendant's drainage system was planned and executed—large enough to carry off all the water which the system could deliver to it in times of the heaviest recorded rainfall; and, so far as the plaintiff's land is concerned, it proved sufficient for two years after the system was fully completed in 1908. Since then the adjoining proprietors, including the plaintiff, have filled in their land, and the channel below the plaintiff's land has become obstructed and in places filled in so that it now no longer exists as a well defined channel. Beginning in 1910, the plaintiff's land has been flooded at times of heavy rainfall from eight to ten times in the course of the summer, for a distance of thirty to forty feet back from the bank of the stream, and the soil has been washed away so as to uproot and carry off vegetables planted therein, about thirty times since 1910. The plaintiff has not filled in or obstructed the channel except as the discharge from the defendant's culvert may have washed his filled land into it.

Connected with the defendant's drainage system are fifty-one catch-basins designed to catch and retain the solid matter washed from the streets. The contents of these catch-basins are liable to ferment and putrefy, and are in part carried into sewer-pipes, at times of heavy rainfall, and discharged through the Belden Street culvert into the stream above the plaintiff's land. From time to time after being flooded by the discharge from this culvert, the plaintiff's land has been covered with a foul smelling and offensive deposit, and the plaintiff and his family subjected to annoyance, discomfort, and unsanitary influences.

*Bernard F. Gaffney* and *Joseph G. Woods,* for the appellant (plaintiff).

*James E. Cooper,* for the appellee (defendant).

BEACH, J. The trial court directed a verdict for the defendant on the ground that the natural channel of the stream was fully adequate to carry off the drainage turned into it; that the subsequent filling in and consequent insufficiency of the channel was in no respect chargeable to the defendant city; and that the city was not liable for continuing to discharge its surface drainage into a watercourse which, without its fault, had become inadequate to carry it away, in times of heavy rainfall.

Independently of any other consideration, we think there must be a new trial because the jury would have been justified in finding that the city was maintaining a nuisance by discharging offensive sewage on the plaintiff's land. It is immaterial that third parties also contributed to the result. *Watson* v. *New Milford,* 72 Conn. 561, 45 Atl. 167; *Morgan* v. *Danbury,* 67 Conn. 484, 35 Atl. 499.

That condition, if the jury should find it to exist, may be remedied by more frequent cleaning of the defendant's catch-basins; and the more important question is whether, as against this plaintiff, the defendant is entitled, under the circumstances indicated by the testimony, to continue to discharge this surface drainage into the stream, notwithstanding that the channel is no longer capable of carrying it away, in times of heavy rainfall.

The pleadings and the briefs of the parties treat the plaintiff as a lower riparian owner on a natural stream; and we accordingly adopt that view, although there is evidence which might justify a different conclusion.

The defendant city claims the right, as a riparian owner, to drain its premises into the stream and so

accelerate its flow, without liability to lower owners for the consequences.

This claim assumes that the defendant was making a lawful and reasonable use of the stream. But there was testimony from which the jury might have found that, as to about one half of the area drained, the city had intercepted surface drainage which would naturally have found its way into the stream below the plaintiff's land and diverted it into the stream at a point above the plaintiff's land.

It would follow from such a finding that notwithstanding the channel was large enough, in its natural condition, to carry away both the normal and the surplus surface water without flooding the plaintiff's land, the defendant would be exceeding its rights as a riparian owner by casting such surplus surface water into the stream at a point above the plaintiff's land. The defendant could not have been made liable in damages for this wrong until some injury resulted therefrom; but if, and when, the channel became inadequate and the plaintiff's land was flooded, the defendant would then become liable for such portion, if any, of the total damage as the jury might reasonably find to have been caused by the wrongful act of the defendant in so casting surplus surface water into the stream above the plaintiff's land. *Sellick* v. *Hall*, 47 Conn. 260, 273.

It would also follow from such a finding that the defendant could not successfully claim to be immune from liability because engaged in the proper execution of a governmental duty; for the defendant, in constructing and maintaining this double system of sewers, was acting under the authority of its special charter, which gives it the right to take by condemnation proceedings "any land, or rights or easements in lands, watercourses, or ways," which may be necessary for the disposition of its sewage. 14 Special Laws, p. 351.

The defendant has not so taken the plaintiff's rights in this stream, and therefore the defendant could not successfully claim to be acting within the scope of its authority from the State, in case the jury had found that it was asserting a right or easement in this watercourse which was inconsistent with and adverse to the plaintiff's rights as a lower riparian owner.

We also think that there was evidence from which the jury could reasonably have found that some part of the filling in of the channel below the plaintiff's land was due to the washing away of the land above such filling; and that such washing and filling was in some part attributable to the introduction of the surplus surface water into the stream above the plaintiff's land, and the consequent acceleration of the flow of the stream at and near that point.

There is error and a new trial is ordered.

In this opinion the other judges concurred.