DONNELLY BRICK COMPANY, INC. *vs.* THE CITY OF
NEW BRITAIN.

First Judicial District, Hartford, January Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and JENNING, Js.

The right of a riparian owner to the accustomed flow of a stream
through his land is inseparably annexed to the soil.

If a city, in the absence of a legal right so to do, causes a stream
to be appreciably or materially, that is, substantially polluted
by emptying sewage into it, it is guilty of a nuisance for which
a lower riparian owner, entitled to the use of the water, may
recover damages.

Ordinarily a new trial will not be granted to a plaintiff whose dam-
ages are nominal; but this rule is not applicable to an action
for the pollution of a stream, where the nuisance is not only a
present but a continuing one.

The complaint in the present case stated two causes of action, the
first of which was to recover damages for injuries to the plain-
tiff's property caused by the pollution of the brook which flowed
through it and by the overflow of the polluted waters, during a
period of heavy rainfall, into a clay pit maintained by the
plaintiff near the banks of the stream. The jury returned a gen-
eral verdict for the defendant. *Held* that the only reasonable
conclusion open to the jury upon the evidence was that the
defendant had appreciably and materially polluted the brook;
and that, since the plaintiff was entitled at least to nominal
damages, a new trial must be ordered.

Under the second cause of action, the plaintiff sought recovery on
the ground that the defendant had increased the flow of the
brook beyond its normal capacity and had thus caused the
damage complained of. *Held* that the jury might reasonably
have found from the evidence that the flooding of the clay pit
was caused by a storm of such unprecedented severity as to
constitute an act of God, and by the plaintiff's own negligence
in failing to maintain a sufficient dike around the mouth of
the pit.

The trial court's charge to the jury upon the issue of pollution was
erroneous in two respects; first, because it did not include an
instruction that the appreciable or material, that is, the sub-
stantial contamination of the water would constitute a nuisance
and hence an unreasonable use of the brook; and, second, be-
cause it contained a statement that the defendant was privi-
leged to make such use of the brook as did not unnecessarily

and unreasonably pollute it, since a nuisance could not be justified either on the ground that it was reasonable or that it was required by public necessity.

With reference to the defendant's liability for increasing the flow of the stream beyond its normal capacity, the trial court instructed the jury in effect that the plaintiff could not recover unless the defendant's act was the sole proximate cause of the flood, and that if the storm, which accompanied it, was so unusual and unprecedented that it could not have been foreseen, and that if the flood would not have occurred without it, the defendant would be relieved of responsibility. *Held* that the trial court erred, since the defendant would be liable if its own act and the storm were each an efficient cause of the flood and without which it would not have happened; and that the storm could not be regarded as an act of God excusing the defendant unless it was the sole cause of the flood, which no foresight or care, reasonably to have been expected, could have prevented.

Unless an appellant's requests to charge are made a part of the finding, assignments of error relating thereto will not be considered by this court.

Argued January 6th—decided June 6th, 1927.

ACTION for an injunction restraining the defendant from polluting a stream flowing across land of the plaintiff, for damages, and for other relief, brought to the Superior Court in Hartford County and tried to the jury before *Banks, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

*Donald Gaffney,* for the appellant (plaintiff).

*John H. Kirkham* and *Joseph F. Berry,* with whom, on the brief, was *Margaret W. Perkins,* for the appellee (defendant).

WHEELER, C. J. The plaintiff's cause of action is founded upon the pollution of Willow Brook, and upon the increase of the carrying capacity of the brook beyond its capacity, by the defendant city. The part of the appeal which is properly before us is from

the denial of the motion to set aside the verdict and in certain instructions given the jury. We take up first the refusal of the trial court to set aside the verdict, with especial reference to the cause of action founded upon the pollution of Willow Brook. As we read the evidence we are of the opinion that the jury must reasonably have found these facts: The plaintiff is engaged in the manufacture of brick, and its plant occupies about seventy acres on which are kilns, machine rooms, boiler rooms, homes for workers, industrial railways and other necessary equipment for a brickyard, and it employs about sixty men. Its land is low and flat; through it flows, in a southeasterly direction, Willow Brook, which enters plaintiff's property through a railroad culvert under the New Britain-Berlin branch of the New York, New Haven and Hartford Railroad, and is ordinarily about twenty feet in width and one or two feet in depth. To the north and west of the railroad culvert is the South End Park, owned by the city of New Britain, and through which flows this brook, and thence through the culvert to and through plaintiff's land.

Willow Brook, prior to 1923, had been divided on the west side of this railroad line into two branches, about one third of the water flowing in a stream along the west side of the railroad tracks and thence in a southerly direction. In 1923, New Britain raised the land of the park, which before would be covered with water from the overflow of the brook in times of periodic flood. At the same time it straightened the course of the brook and deepened its bed at the culvert from two and seven tenths feet to three feet. As a result, the flow of the waters of the brook along the west side of this branch line to the south was cut off and almost all the water of the brook caused to flow under the culvert and through or upon the plain-

tiff's land. The principal source of Willow Brook is Lake Shuttle Meadow reservoir, a large artificial reservoir of New Britain. It draws its water from four principal sources; the much larger water sheds of these sources are foreign to this brook.

There was no rainfall from April 1st to April 5th, 1924, yet because of the water, principally from foreign watersheds, the Lake Shuttle Meadow reservoir rose to twenty-four feet, ten inches. When the water rose to twenty-four feet, a six-inch flashboard was put on the dam. On April 5th, 1924, there was a heavy rain and water was precipitated over the dam at the rate of a million gallons an hour into this brook. The rain continued on April 6th; the overflow of the dam was constant and the brook was greatly swollen as a result. Because of the deepening of the channel of the brook during the preceding summer, and the straightening of the course of the brook, and the raising of the level of the ground on both sides of the stream, the waters of the brook did not pond, as formerly, on the low flat territory of South End Park, as it had before the city turned its waters into the other division of the brook, but were precipitated with great force and velocity at this time into the brook and thence through the railroad culvert and plaintiff's premises. The jury might reasonably have found that there existed on April 5th and 6th, and at the time of plaintiff's alleged injuries, a flood of unprecedented proportions. The sewer outlets discharging into Willow Brook drain the storm-water sewers of about one third of the area and population of New Britain. Three of these storm-water sewers, at full capacity, would discharge upward of 8,250,000 gallons in twenty-four hours. Upward of twenty storm-water sewers of New Britain, having upward of four hundred catch basins, empty directly into this brook as it flows

through the city. These catch basins collect all sorts of solid and refuse matter from the streets, which putrefy in these basins and in times of heavy rains are washed in large measure into the brook. There are six direct sanitary or crude sewage connections from buildings in New Britain; through two of these upward of one hundred and thirty persons used these connections. Prior to April, 1924, there were two direct connections from the sanitary sewer at the foot of South Main Street to Willow Brook, and in times of flood or high water the sanitary sewage of this trunk-line, which is used by about fifteen thousand people, would be discharged directly into this brook. All of these discharges were above plaintiff's premises. There were no private sewers or sanitary connections discharging pollution into Willow Brook above the plaintiff's property. All of these sewer outlets and connections, storm and sanitary, for the city of New Britain, flow into Willow Brook, and are either constantly discharging into it, or recurrently discharging into it in times of heavy rain or flood.

On April 5th, 6th, and 7th, a large volume of water flowed over the Lake Shuttle Meadow reservoir dam every twenty-four hours. This was augmented by the discharge from all these sewer outlets and connections. The waters of Willow Brook have not been fit for domestic use at plaintiff's·premises for years, and they became, as a result of this constant pollution of the city of New Britain, greatly polluted and filthy. The water gave off noxious odors and vapors.

On plaintiff's property east of its buildings was a clay pit from which clay had been extracted. The pit had a small depression in the northwest corner, in which rain water was collected and used for boiler purposes. In the southeast portion of the pit was a sump hole, at which point a pump was located. Sur-

rounding the pit the plaintiff had built dikes eight or nine feet above the surface of the ground, wide and strong enough to have a cart driven over their tops. These dikes were built to prevent the clay pit from filling with the water of periodic freshets and floods of Willow Brook. In the fall of 1923, the plaintiff opened a new clay pit situated directly to the north of the old clay pit. Dikes were erected to protect the new clay pit from the flood waters of Willow Brook. The south dike of the new pit was not quite parallel with the north dike of the old clay pit and the brook flowed between the dikes. This restricted the overflow of the brook in times of freshet over a considerable area which it had been accustomed to overflow, and the dike should have been built with adequate provision for the escape of flood waters. In the late afternoon of April 6th, 1924, the plaintiff's dikes were inspected and found in good condition. The waters of Willow Brook had risen to within about one or one and one half feet of the top of the dike, and had ponded on all of plaintiff's land and land adjacent to plaintiff's to the north of the new clay pit for a distance of several hundred feet. Before seven o'clock on the morning of April 7th, the water had broken through or over the north dike of the old clay pit and filled the old clay pit.

There was no controversy over the fact that the city of New Britain had at and prior to the time of this action discharged crude sewage in substantial volume at all times, and in times of heavy rain the crude sewage from fifteen thousand people, directly into Willow Brook, and also discharged the street drippings and filth from upward of fifteen storm-water sewers. All of these discharges were above plaintiff's property and continued to the date of trial. There is no real dispute but that these discharges of pollu-

tion into this brook were appreciable in quantity. The plaintiff was entitled as a riparian owner to have this brook flow through its land as it had been accustomed to flow as a right inseparably annexed to its soil. *Nolan* v. *New Britain,* 69 Conn. 668, 681, 38 Atl. 703. The defendant city had no right to appreciably or materially pollute the brook and thus cause a nuisance and impair plaintiff's rights in it. *Stamford Extract Mfg. Co.* v. *Stamford Rolling Mills Co.,* 101 Conn. 310, 322, 125 Atl. 623. "If a municipal corporation, in the absence of a legal right so to do, causes sewage to pollute a watercourse, to the use of which a lower owner through whose premises the watercourse flows is entitled, it is guilty of a nuisance for which damages may be recovered." *Nolan* v. *New Britain, supra,* 678. The evidence was so conclusive that the defendant city had appreciably and materially polluted this brook, that the jury could not reasonably have found otherwise and must have awarded the plaintiff at least nominal damages.

The case of the plaintiff upon this issue justifies the same conclusion we reached in *Feudl* v. *New Britain,* 88 Conn. 125, 90 Atl. 35, where we said, at page 128: "Independently of any other consideration, we think there must be a new trial because the jury would have been justified in finding that the city was maintaining a nuisance by discharging offensive sewage on the plaintiff's land." In no jurisdiction has the subject of the pollution of a stream to the injury of a riparian owner received a fuller or more frequent consideration than in our own State. The law upon this subject is too firmly settled in the cases we cite to require further consideration. *Morgan* v. *Danbury,* 67 Conn. 484, 35 Atl. 499; *Nolan* v. *New Britain, supra; Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 45 Atl. 154; *Waterbury* v. *Platt Bros. & Co.,* 76 Conn. 435, 56

Atl. 856; *New Milford Water Co.* v. *Watson,* 75 Conn. 237, 52 Atl. 947, 53 *id.* 57; *Platt Bros. & Co.* v. *Waterbury,* 80 Conn. 179, 67 Atl. 508; *Gorham* v. *New Haven,* 79 Conn. 670, 66 Atl. 505; *Feudl* v. *New Britain, supra; Stamford Extract Mfg. Co.* v. *Stamford Rolling Mills Co.,* 101 Conn. 310, 125 Atl. 623.

The defendant's claim that there could be no recovery in this action because there had been no unreasonable or substantial pollution of Willow Brook, is based upon a misconception of the evidence before the court. The defendant is likewise in error in assuming that plaintiff's action was not for the damage to its property through the pollution of the brook, but merely for the damage resulting from the overflow of the polluted waters of the brook based upon a single flood. The action, as we read the complaint and evidence, was for the damage to plaintiff's property caused by the pollution of the brook and the overflow of its polluted waters. The plaintiff, upon this ground, was at least entitled to nominal damages. Where a nuisance is not only a present but a continuing one, the usual rule that a new trial will not be granted for nominal damages is not applicable, otherwise the continuance of the nuisance might be perpetual and the owner of the land compelled to submit to the invasion of a right inseparably attached to his soil because the only damage from the nuisance he could prove was nominal, or if defendant's contention were accepted, because it was not unreasonable or substantial. A rule of law inviting such consequences would be an intolerable invasion of a riparian owner's right and require us to overrule a long line of our best established authorities.

Taking into consideration the entire evidence, in connection with defendant's defenses that the breaking of the dike was due to the act of God and to plain-

tiff's own negligence, we cannot hold, upon the motion to set aside the verdict, that the jury might not reasonably have found in favor of the defendant upon the other ground of action—that the defendant city had increased the carrying capacity of this brook beyond its normal capacity. In view of our conclusion in reference to the pollution of the brook requiring a new trial, we do not deem it necessary or desirable to support our conclusion upon this ground of action by detailed reference to the evidence.

The assignments of error based upon the charge relating to the pollution of this brook are the only assignments upon this subject which will be considered; the numerous assignments based upon the court's refusal to charge upon this subject must be disregarded, since the finding does not make the plaintiff's requests to charge a part of it. The court did not include in the instructions to the jury anything relating to the subject of a nuisance arising from the pollution of this brook; without an instruction that the appreciable or material, that is, the substantial, pollution of this brook by the discharge of sewage into it would be a nuisance and hence an unreasonable use of the brook, the charge was wanting upon one of the two, and perhaps the chief, grounds of action. The court charged that the defendant city had the right to make such use of the brook as does not unnecessarily and unreasonably pollute it. In effect this was saying that the city had the right to pollute this brook if it was necessary so to do, and if it was reasonable for it so to do. The city had no right to appreciably or materially, that is, substantially, thus pollute the brook; if it did so, it was an unreasonable use. *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 547, 45 Atl. 154; *Nolan* v. *New Britain,* 69 Conn. 668, 38 Atl. 703. When the use by the city had been shown, as in this

case, to be a nuisance, the reasonableness of the use could not justify the nuisance. "It is no defense to an action at law or a bill for an injunction against a nuisance for the defendant to say he is conducting himself reasonably in doing the thing which is complained of. 'The application of principles governing the jurisdiction of the court in cases of nuisance does not depend on the question whether the defendant is using his own reasonably or otherwise. The real question is, does he injure his neighbor?'" 5 Pomeroy's Equitable Jurisprudence (4th Ed.) § 1953; *Reinhardt v. Mentasti*, L. R. 42 Ch. Div. 685. The city could not support its pollution of this stream upon the ground of its public necessity. A like claim was made in *Platt Bros. & Co.* v. *Waterbury*, 72 Conn. 531, 45 Atl. 154, and disposed of at page 551, and in these words: "Public necessity may justify the taking, but cannot justify the taking without compensation. It may be necessary for a city to thus mix with its drainage such substances, but it is not necessary to pour such mixture into the river, without purification; indeed the purification is coming to be recognized as a necessity. But however great the necessity may be, it can have no effect on the right to compensation for property taken."

Upon plaintiff's second cause of action, defendant's increase of the burden and carrying capacity of Willow Brook, the court instructed the jury as follows: "Now, even if you should find that the defendant has exceeded its rights as a riparian owner to make a reasonable use of the waters of the brook, in that it has substantially increased or accelerated the flow of water in the brook beyond the natural capacity of the channel of the brook, still it is not liable therefor to the plaintiff in this action unless you find that its action in this respect was the cause of the flood which dam-

aged plaintiff's property, and the burden is upon the plaintiff to prove by a fair preponderance of the evidence that the flood which caused the damage was the proximate result of the acts of the city in substantially increasing the flow of water in Willow Brook."

The jury might well have understood from this instruction that no matter to what extent the city of New Britain had increased or accelerated the flow of the water of the brook beyond its natural capacity, the plaintiff could not recover in this action unless it proved by a fair preponderance of the evidence that this increase or acceleration was the cause of the flood which damaged plaintiff's property. Manifestly the charge that the city must have caused the entire flood before plaintiff could recover for its acts of increase and acceleration is not the law. If defendant's acts were a contributing cause of the increase and acceleration, together with the flood, although not the sole proximate cause of it, the liability of the city would follow, provided defendant's acts and the flood were each an efficient cause of the breaking of the dike, and without the operation of which the accident would not have happened. *Schnare* v. *Ryan-Unmack Co.,* 88 Conn. 225, 230, 90 Atl. 933. In this connection the court instructed the jury, in effect, that if they found the storm was so unusual and unprecedented that it could not have been foreseen, as defendant claimed, and that the break in the dike would not have occurred without it, they would not be justified in finding defendant liable for the consequences of the break and that unless the act of the defendant contributed as a sole proximate cause of the break, the plaintiff could not recover against the city for damages resulting from the increase and acceleration of the brook beyond its capacity. This instruction referred to the so-called

"act of God" defense of the defendant. The flood cannot be regarded as an act of God and thus relieve the defendant of liability for the accident resulting in damage if a contributing cause of the accident were its own act. The flood must be the sole cause of the accident which no foresight or care, reasonably to have been expected, could have prevented, in order to have it considered an act of God. *Nitro-Phosphate &*
*O. C. M. Co.* v. *London & St. K. Docks Co.*, L. R. 9 Ch. Div. 503, 519; 1 Corpus Juris, 1174, 1175. The instructions to which we have referred are four of the six instructions to the jury which are complained of in the appeal; the other two instructions complained of were clearly unexceptionable. All of the other assignments of error relate to requests to charge and cannot be considered, as already stated, for the reason that plaintiff's requests to charge were not made a part of the finding.

As a new trial must be granted, we point out that the complaint fails to allege all of the acts of increase of the carrying capacity of Willow Brook upon which plaintiff relies.

There is error and a new trial is ordered.

In this opinion the other judges concurred.