## FRANK TAVANO
vs.
## WATERBURY TRUST CO.

Superior Court    New Haven County    File #11513
(At Waterbury)

Present:  Hon. ALFRED C. BALDWIN, Judge.

Thomas R. Fitzsimmons,    Attorney for the Plaintiff.

Bronson, Lewis & Bronson,    Attorneys for the Defendant.

**MEMORANDUM FILED DECEMBER 16, 1935.**

BALDWIN, J.  On July 6, 1935, and for a long time prior thereto, plaintiff was engaged in business at 26 Union Street in Waterbury, of selling at retail, wall paper, paints, oils, calcimine and other materials for use similar to these articles, paper hanger's supplies and utensils, glass, mirrors and other merchandise.  At the rear of the building in which the store is located and attached thereto is an office building and at the rear of the office is a building used as a shop which is used by plaintiff, and at the rear of the shop building is a six-car garage.

Along the easterly side of these buildings is an open space, or common passway, leading southerly to Union Street, and in this passway is a five-inch tile drain or sewer which runs

from opposite the rear end of the shop building to the sewer in Union Street. This drain or sewer takes .the rain water that collects on portions of the roofs of the shop and of the garage and it also serves a toilet located at the rear or the southwesterly corner of the shop.

At a point in the passway opposite the office, this drain or sewer pipe is connected to a tile drain pipe through which rain water collected upon roofs of the buildings in which the store, office and shop are located, is conveyed to the pipe first mentioned.

The plaintiff is a tenant of the defendant and the building in which his store is located and upon which are roofs collect' ing water which is carried through these pipes are other tenants of the defendant. These drains have been in use a long period of time. Defendant, after acquiring the property, had repairs made upon some of these roofs and after making these repairs portions of waste material found its way into these drains. Other material collecting upon these roofs found lodgment in these drains, as did the discharge from the toilet located in the shop.

At the union of some of the gutters along the eves of some of the roofs with the leaders no wire basket or other device was used to prevent materials collecting upon the roofs from being carried from the roofs through the gutters and leaders into these drain pipes.

On July 6, 1935, at 1:50 P.M., a very heavy rainfall oc' curred which continued until 2:30 P.M., two and ten hun' dredths inches of rain falling in that intervening space of time. These drains, because of the materials which they had become clogged, especially the drain leading from the office roof and the roof of the main building and thence to the street sewer (as illustrated by defendant's exhibit 4) were wholly incapable of carrying the water collecting from these roofs. As a consequence much water backed up in the shop and flowed into the office and thence into the store and accumulating to the depth of some inches in the cellar under the store causing a very damp atmosphere and condition to be present and to continue therein for sometime.

In both May and June preceding the storm of July 6th when rain storms of ordinary proportions occurred these drains were incapable of carrying the accumulating water, and

plaintiff had trouble from the water backing up in the drain and flowing in upon the office floor and wetting the rug and causing dampness and defendant was advised of these conditions on several occasions. On occasions, it sent a plumber who cleaned the drain leading from the toilet to the main drain and defendant was advised by its plumber that the drain should be dug up and cleaned. This was not done. The main trouble appears to have been where the drain leading from the leaders from the roofs of the office building and that end of the shop adjoining the office building joins the main drain, as shown in exhibit 4.

Had these drains been dug up and cleaned, as defendant was advised should be done, before the storm of July 6, no such extensive damage would have occurred. Indeed, upon the evidence in the case, I could not find that any damage would have resulted had proper attention by the defendant been given. The defendant was negligent and its negligence was a substantial factor in causing the damage.

The defendant has set up, as a special defense, that this storm was "an act of God", and therefore it is not liable. It is true that the rainfall was unusualy heavy for a short space of time, but by no means was it the sole cause of damage. Had the defendant employed reasonable care it would have averted the substantial part, if not the entire damage. **Pleasure Beach Park Co. vs. Bridgeport Dredge & Dock Co., 116 Conn. 496, 502; 165 Atl. 691. Donnelly Buick Co. vs. New Britain, 106 Conn. 167; 137 Atl. 745. Feeney vs. New York Waist House, 105 Conn. 647; 136 Atl. 554. State vs. Housatonic Water Co., 51 Conn. 137, 142.**

The stock of merchandise damaged included some 11,000 rolls of wall paper and some wall paper borders which were kept in bins in the cellar, a lot of mirrors and glass, shellac, calcimine, sienna, ochre and a very little plaster of paris. There was also damage to merchandise consisting of paper hangers' tools and implements and to furniture and furnishings and office implements, and the business because of the destroyed stock in trade and the damp and dirty condition caused by the water.

Wall paper is a very porous material and it absorbs dampness readily from a very damp atmosphere, and having absorbed dampness, as this stock did, it becomes useless as a marketable material. Some of this paper was in contact with

the water.

Plaintiff claims damages resulting to a lot of sample wall paper books. These books include samples of the wall paper in stock, some of which books are put in the hands of paper hangers and others. As a particular pattern of paper is sold the sample of such paper becomes of no use or value, and ordinarily is destroyed, and thus the sample book becomes of no value. Sale of the paper from which a sample book is made leaves the sample book of no merchantable value and allowance of damages to the paper from which these sample books were made leaves these books without value for which damages may be allowed, or, at least, includes any value the damage to which was occasioned.

Some damages were claimed resulting to some moulding materials. This stock appears to have been old and up on high racks. I cannot find damages resulting to this material.

I find damages resulting to all wall paper and borders (which includes, as indicated hereinbefore, all damages to sample books) in the amount of $1603.20. Of this damaged wall paper and borders, salvaged paper and borders were sold to the amount of $222.75, leaving a balance of wall paper damage amounting to $1380.45. Damages resulting to mirrors and glass amounts to $360.25 and to shellac, calcimine, sienna, plaster of paris, ochre and whiting, $182.30.

There is some salvage in the tools and implements and $50.00 is a reasonable amount of damages to allow on account of these articles. Fifty dollars is also a reasonable allowance for damages to office furniture, furnishings, fixtures, etc.

Plaintiff's business was interrupted for a period of approximately four weeks, and I find his damages reasonably resulting from this interruption to amount to $250.00. These damages constitute a total of $2273.00 for which judgment may be entered for the plaintiff.