THE HARTFORD RAYON CORPORATION *v.* THE CROMWELL WATER COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued November 7, 1939—decided January 3, 1940.

*James W. Carpenter,* and *Edwin J. Harrigan* of the New York bar, with whom was *Richard F. Berry,* for the appellant (plaintiff).

*Robert J. Woodruff,* for the appellee (defendant).

MALTBIE, C. J.   The plaintiff operates a manufacturing plant upon a tract of land in Rocky Hill through which flows Dividend Brook.   Since 1924 it or its predecessors in title have maintained a dam upon the premises for manufacturing purposes.   Because the water of the brook is particularly well adapted for processing the plaintiff's products and the flow of the stream is rather consistently steady, the

premises are peculiarly adapted to its purposes. The average flow of the stream is substantially two million gallons a day and the plaintiff needs and uses that amount, about one-half for processing purposes and the remainder for general use in the establishment. The stream with three wells the plaintiff has driven normally supplies its needs, but in dry seasons it has at times had to curtail or suspend operations. The defendant is incorporated for the purpose of supplying water for public, domestic, manufacturing and other purposes to the inhabitants of the town of Cromwell and its immediate vicinity and has the power to condemn lands. 11 Special Laws, p. 62. In 1927, by special act, it was authorized to issue bonds for the purpose of improving and extending its water system, "provided no rights herein granted shall be so exercised as to in any way adversely affect the vested rights of any person or corporation existent at the time of the passage of this act in or on the brook now or formerly known as Dividend Brook." 20 Special Laws, p. 466. The water it now supplies to its customers is not well suited for domestic uses and it has been ordered by the public utility commission to supply a better quality. For that purpose it bought seven acres of land within the watershed of and bordering upon Dividend Brook about a mile above the plaintiff's factory and it proposes to sink a well upon this land some ninety-five to one hundred and eighty feet from the brook and expects to pump from it one hundred and fifty thousand gallons of water a day. The plaintiff brought this action for the purpose of securing a permanent injunction against the construction of this well, and from the adverse judgment of the trial court it has appealed.

The defendant's well will not directly or indirectly take water from the brook, but the claim of the plain-

tiff is that it will affect the flow in the brook by intercepting water which otherwise would percolate through the earth into the stream. In *Roath* v. *Driscoll,* 20 Conn. 533, we followed the leading English case of *Acton* v. *Blundell,* 12 M. & W. 324, 348, and *Greenleaf* v. *Francis,* 35 Mass. (18 Pick.) 117, in holding that interference with water percolating through the earth by the sinking of a well upon a man's land gave no right of action to another landowner, though it resulted in a diminution of the water available to him upon his own land, at least in the absence of a malicious intent. The *Roath* case was followed in *Brown* v. *Illius,* 25 Conn. 583, 594, but a distinction was there suggested as regards water running underground in a defined stream which could be or was known. The case of *S. O. & C. Co.* v. *Ansonia Water Co.,* 83 Conn. 611, 78 Atl. 432, was concerned solely with the water of a watershed flowing in small streams or ponded upon the surface of the ground. In *Swift & Co.* v. *Peoples Coal & Oil Co.,* 121 Conn. 579, 186 Atl. 629, where we held that an action would lie for pollution carried to the plaintiff's premises by percolating water, we referred (p. 590) to the distinction drawn in *Brown* v. *Illius,* supra, in the dissenting opinion of Ellsworth, J., between pollution due to percolating water and an interference with the flow of such water; and we called attention to the fact that many well-considered American cases did not follow the English doctrine as to nonliability for interference with water percolating beneath the surface of the ground, and held that an owner of land could not interfere with the flow of such water beyond his right to make a reasonable use of it. But the decision in *Roath* v. *Driscoll,* supra, has not been overruled and stands as the law of this state. If we continue to adhere to it, plainly the plaintiff has no cause of action,

and it urges in this case that we reconsider the matter and adopt the principle established in those American jurisdictions which have departed from the English rule.

As the case stands before us there is no occasion to do this. The rights which the plaintiff claims as a riparian proprietor and by reason of the use of a dam which has been maintained on the stream for a period longer than necessary to establish prescriptive rights are not primarily to control the uses which another owner of land makes of water passing over or through it in or into the brook, but are to receive and use the water flowing in the brook in connection with the occupation of its own land. "It is apparent that the right of a riparian owner . . . is not founded on a title to the water or any property in it before it enters upon his land, but on the ground that an injury or tort, in the nature of a nuisance, has been done to his right to receive and enjoy upon his land the flowing and common element. He has no legal right therefore but that of reception and enjoyment of the natural flow of the water, as a landowner on his land, that can be injured." *Agawam Canal Co.* v. *Edwards,* 36 Conn. 476, 498; and see *Ingraham* v. *Hutchinson,* 2 Conn. 584, 590; *DeWitt* v. *Bissell,* 77 Conn. 530, 535, 60 Atl. 113; *Feudl* v. *New Britain,* 88 Conn. 125, 129, 90 Atl. 35; *Emporia v. Soden,* 25 Kan. 588, 604. Until it was proven that the sinking of the well by the defendant would actually divert water from the brook, it would not be shown that the plaintiff had suffered any legal injury.

It is true that in *Sisters of St. Joseph Corp.* v. *Atlas Sand, G. & S. Co.,* 120 Conn. 168, 172, 173, 180 Atl. 303, we said that while ordinarily an injunction would not issue unless it was shown that there was an invasion of the plaintiff's right which would be at-

tended with actual and substantial damage, a more liberal rule was followed in cases of a permanent or continuing nuisance where a legal right is invaded, as in the instance of an interference with water rights and the like, and that in such a case the amount of damage is not controlling. See *Trowbridge* v. *True*, 52 Conn. 190, 199. In this case there is no finding that the uses proposed to be made by the defendant of the water gathered in the well will materially or appreciably affect the amount of the flow of the brook and in view of the difficulty and uncertainty attending an attempt to determine the course and amount of water percolating beneath the surface, we certainly cannot assume that such a result would follow. The difficulty with the position of the plaintiff in this case is not a failure to show substantial damages, but is a failure to show an invasion of its rights. While the trial court placed its decision squarely upon the ground that the plaintiff had no redress for any injury which it might suffer by reason of interference with the flow of the water which would naturally percolate into the brook, the facts fail to show any cause which would justify the issuance of the injunction claimed, and the decision of the trial court was for that reason correct. As we said in *Swift & Co.* v. *Peoples Coal & Oil Co.*, supra, 588, of pollution by percolating water: "To deny to a landowner a right to make a certain use of his property because of a mere possibility that the water percolating from it to the land of another may be polluted to the injury of that other would unjustifiably restrict property rights. Unless and until the landowner knows or should know that his use of his land will cause injury to another he should not be fettered in his right to enjoy it."

It may be that it will not be possible, until the defendant begins to draw water from the well, to ascer-

tain the actual effect of its doing so upon the flow of the brook. By bringing this action the plaintiff has left the defendant in no doubt as to its purpose to resist an invasion of its rights and though the defendant may expend considerable sums in building the well the plaintiff will not, because of that, necessarily be debarred from appropriate injunctive relief. *Armstrong v. Leverone,* 105 Conn. 464, 475, 136 Atl. 71; *Sleeping Giant Park Asso., Inc.* v. *Connecticut Quarries Co., Inc.,* 115 Conn. 70, 79, 160 Atl. 291; see also *Mills on Monatiquot River* v. *Braintree Water Supply Co.,* 149 Mass. 478, 486, 21 N. E. 761; *Miller* v. *Bay Cities Water Co.,* 157 Cal. 256, 284, 107 Pac. 115; *Emporia* v. *Soden,* supra, 602, 612.

There is no error.

In this opinion the other judges concurred.