EDWARD E. MARTIN v. E. H. LOTZ.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued March 7—decided April 16, 1940.

*James W. Ryan,* with whom was *C. A. Van Hagen, Jr.,* both of the New York bar, and, on the brief, *Thomas C. Flood,* for the appellant (defendant).

*Curtiss K. Thompson,* with whom was *Herbert S. MacDonald,* for the appellee (plaintiff).

AVERY, J.   The plaintiff in this case was the owner of a cabin cruiser, the "Wilmar," which he claimed was injured in the afternoon and evening of September 21, 1938, by the cabin cruiser "Mabs" owned by the defendant.   The plaintiff claimed that the defendant's vessel was negligently moored and broke adrift from her mooring, colliding with the vessel of the plaintiff and causing it damage.   The case was tried to the court and judgment entered for the plaintiff, from which the defendant has appealed.   The facts of the case so far as material to the questions involved in this appeal are these:   Both of these vessels were moored in an inlet on the Connecticut River known as North Cove. The only opening in the cove to the Connecticut River is on its south side, where there is an entrance about one hundred feet in width with a channel about fifty feet in width and ten feet in depth running into and across the cove.   On September 18, 1938, the Wilmar was moored in the cove between two dolphins, the stern being made fast to the more northerly dolphin and the bow to the southerly dolphin, so that the bow pointed in a southerly direction toward the inlet.   The stern line ran from the most northerly dolphin to the port cleat at the stern, was made fast to that cleat, then

continued across the stern and was made fast to the starboard cleat. The Mabs was moored between two dolphins, her bow being fastened by a line to the same dolphin to which the bow of the Wilmar was made fast and her stern being fastened by a line to a third dolphin to the south, so that her stern pointed in a southerly direction toward the inlet. As moored on September 18, 1938, the two boats were about fifty feet apart with one dolphin between them, to which were fastened the bow of the Wilmar and the bow of the Mabs. Neither boat was moved by anyone from its position until after the events hereinafter described.

At about 1.30 o'clock in the afternoon of September 21, 1938, the location and relative positions of the two boats were the same as on September 18th. During the afternoon of September 21st, an extraordinary tropical hurricane of unprecedented character struck the Atlantic Coast, including the waters of the Connecticut River at Essex, the wind attaining a velocity of seventy-five miles an hour at about 3.30 o'clock and afterward a velocity of one hundred and fifteen miles an hour. At 3.30 o'clock in the afternoon, the water was at about normal height in North Cove. Thereafter it rose rapidly, being blown up the river from Long Island Sound and mountainous seas developed in the river. The water in the cove rose four to five feet in forty-five minutes and eight feet in five hours, reaching about twelve feet at the crest at 8 o'clock in the evening. In the afternoon, the stern line of the Mabs broke and she swung around with her stern to the north, her bow line remaining fast to the center or common dolphin, so that her port side came in contact with and rubbed against the starboard side of the Wilmar. During the entire afternoon and night, the Wilmar remained fast to her moorings, with both her bow and stern lines intact and unbroken and both made

fast to their respective dolphins. Although the port cleat on the stern deck was ripped loose at some time during the storm, the stern line remained fast to the starboard cleat on the stern deck. During the period from about 3.30 o'clock in the afternoon of September 21st, while the storm was in progress, until about 10 o'clock in the morning of September 22d, the Mabs lay alongside the Wilmar, her stern line broken, her bow still fastened to the center dolphin by her bow line and pointing south. During that time, the port side of the Mabs battered and damaged the hull and other portions of the Wilmar on the starboard side.

The court found that the lines on the plaintiff's boat were in good condition and that the plaintiff was not negligent either in the manner or location of the mooring of the Wilmar. The court further found that there was no evidence offered by the defendant in explanation of the collision of the two boats other than evidence concerning the existence of the hurricane and its effect upon other boats in that vicinity. Upon this point, the court found that during the storm at least fifty-seven boats in the Connecticut River, near Essex, were set adrift and twenty of them were blown into the cove, all of these boats having been moored in the river itself and not in the cove adjacent thereto. Of all the boats moored in North Cove, the Mabs was the only one which broke loose from her moorings during the storm. Upon these facts, the trial court reached the conclusion that at the time of the collision the boat of the plaintiff was not in motion and that that of the defendant was in motion; that the plaintiff was at all times free from negligence; and that the unprecedented hurricane, while an act of God, was not the sole proximate cause of the condition, but that the defendant's negligence concurred with the storm in causing

the damage to the plaintiff's boat, and was a contributing cause thereto.

Upon this appeal the defendant claims that no negligence upon the part of the defendant was shown and that no presumption of negligence arose under the circumstances of the case. The defendant makes the further claim that the conclusion of the trial court that the plaintiff's boat was not in motion was not supported by the subordinate facts found. It does not appear from the finding what the condition of the stern line on the defendant's boat was prior to the accident or exactly how it was fastened to the dolphin or what caused it to break and the vessel to swing around, colliding with that of the plaintiff. The conclusion of the trial court that the defendant was negligent is based upon the principle of law to the effect that if a vessel breaks from her moorings and drifts against another thereby causing a collision, the burden rests on the owner of the former to show that her drifting was the result of inevitable accident, or vis major, which due care and nautical skill could not have provided against and was not due to the insufficiency of her fastenings. 11 C. J. 1181; 15 C. J. S. 188. In *Bill* v. *Smith*, 39 Conn. 206, 210, 211, we said: "In admiralty the rule is that when a vessel in motion comes into collision with one that is at anchor, the presumption is that the former is in fault; and she can only exonerate herself by showing that it was the fault of the vessel at anchor, or the result of circumstances utterly out of her power to control. 1 Parsons Mar. Law, 201, and the cases there cited. Both parties substantially concede this to be the rule. The same rule prevails in the common law courts, whenever they are called upon to administer justice in cases of this character. . . . The plaintiff having proved that his own vessel was at anchor, and that the defendants' propeller, in attempting

to pass it, came into collision with it, he established a prima facie case, and was entitled to a judgment unless the defendants could show, either that the collision was occasioned by the fault of the plaintiff, or that it was the result of circumstances utterly out of their power to control. The burden of proof changed and was on the defendants. We think they have failed to establish their defence." The leading case on this subject is *The Louisiana,* 70 U. S. (3 Wall.) 164, 173, where the Supreme Court of the United States said: "The steamer Flushing being aground on Hampton Bar, out of the channel or course of vessels navigating the bay or harbor, and incapable of motion, cannot be justly charged with any participation in causing the collision. The collision being caused by the Louisiana drifting from her moorings, she must be liable for the damages consequent thereon, unless she can show affirmatively that the drifting was the result of inevitable accident, or a vis major, which human skill and precaution, and a proper display of nautical skill could not have prevented."

In order to exonerate the defendant, the act of God must be the sole cause of the damage. *Donnelly Brick Co., Inc.* v. *New Britain,* 106 Conn. 167, 178, 137 Atl. 745; *Pleasure Beach Park Co.* v. *Bridgeport Dredge & Dock Co.,* 116 Conn. 496, 502, 165 Atl. 691. Where a moored vessel breaks loose in the course of a storm, even of unprecedented character, the burden of proof is upon the owner of the vessel to prove not only that fact but also that those in charge of it were not in any respect negligent. "The law allows her to relieve herself (if she can) of that responsibility by proving that the accident was inevitable in the technical admiralty sense. That is, that it was of such a sort that it would not have been prevented by the use of that degree of reasonable care and attention which the situation de-

manded. The burden, of course, is heavily upon the vessel asserting such a defense. Sometimes it is established by showing what was the real cause of the accident (in a case like this the real cause of the erratic movements) and further showing that such cause became efficient without any negligence on the part of the ship. The respondent does not contend that it has shown the real cause of the accident. The defense of inevitable accident has, in some cases, been held to be established, even when the real cause is not definitely ascertained. In all such causes, however, all possible causes have been exhaustively covered, and it has been shown, as to each and all of them, that the proper exercise of reasonable care by owner, master, officers, and crew would not have avoided them." *The Lackawanna,* 210 Fed. 262, 264; *The Havana,* 89 Fed. (2d) 23, 24; *The D. L. & W. No. 442,* 30 Fed. (2d) 250, 251; *The Buffalo,* 56 Fed. (2d) 738, 739, and cases cited.

The fact that no other vessels moored in the cove broke from their moorings except the Mabs and that the stern line on the Mabs broke, without any evidence that the line was in proper condition, was a sufficient basis for the trial court to conclude that her owner had not satisfied the burden resting upon him to prove that there was no negligence in the way in which she was moored and to infer that he was negligent. *Gorfain* v. *Gorfain,* 118 Conn. 484, 486, 172 Atl. 924.

The claim of the defendant that the Wilmar was in motion is not supported by the finding. The reasonable deduction from the finding that the stern line was made fast to the port cleat, "then continued across the stern and was made fast to the starboard cleat," is that the stern line was lengthened no more than approximately the width of the stern when the port cleat gave way; and whether any resulting small increase in the swing of the stern would change the status of the Wil-

mar from that of a vessel moored to one "in motion" within the contemplation of the rule was a question of fact for the trial court to decide. Upon this record, we cannot say, as a matter of law, that the Wilmar was a boat in motion within the contemplation of the rule.

There is no error.

In this opinion the other judges concurred.