TRUMAN P. CROWELL ET AL. *v.* HOWARD S. PALMER ET AL., TRUSTEES OF THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued February 5—decided April 9, 1948

504

*Charles Albom,* with whom, on the brief, was *Nelson Harris,* for the appellants (plaintiffs).

*Charles M. Lyman,* for the appellee (defendant union).

*R. W. Pickard,* with whom, on the brief, was *J. H. Gardner, Jr.,* for the appellees (defendant trustees).

ELLS, J.  Twenty-one carmen working out of the Hartford division of the New York, New Haven and Hartford Railroad brought this action for breach of contract and for tort in the nature of a civil conspiracy against the trustees of the company and Local No. 1435 of the Brotherhood Railway Carmen of America, affiliated with the American Federation of Labor.  They sought damages and an injunction. After the plaintiffs had presented their evidence and had rested their case, the trial court granted a motion for a nonsuit on the grounds that the plaintiffs had not made out a prima facie case entitling them to damages and that they had not shown that they were entitled to injunctive relief.  The plaintiffs have appealed from a denial of their motion to set aside the nonsuit.

The complaint is in one count and is stated in broad terms.  It purports to allege several causes of action, but the appeal relates only to an allegation of a conspiracy between the union and the employer to deprive the plaintiffs of their fair share of overtime work.  In its memorandum of decision, the trial court did not expressly decide the basic issue as to whether a prima facie case of conspiracy had been made out.  It considered and upheld the defendants' claim that the plaintiffs had not made out a prima

facie case entitling them to either damages or injunctive relief. It said, however, that, quite apart from the question of damages, the evidence disclosed "that practically all the plaintiffs have enjoyed Sunday work on an extra basis. So far as had been made to appear no obstacle stood in their way for this extra employment during the period in question." As will later appear, this is tantamount to a holding that there was no unfair discrimination. Since this is so, and since the issue is a basic one which is certain to arise upon a new trial, we directly decide it.

The right of the court to grant a nonsuit is given by General Statutes, § 5662, which provides that the court may grant one "if in its opinion the plaintiff shall have failed to make out a prima facie case." The right is to be sparingly exercised; a plaintiff is entitled to every favorable inference that may be legitimately drawn from the evidence; and a party has the same right to submit a weak case as he has to submit a strong one; *Fritz* v. *Gaudet,* 101 Conn. 52, 53, 124 A. 841; where the granting of a nonsuit must depend in any appreciable degree upon the court's passing upon the credibility of witnesses, the nonsuit should not be granted; *Pentino* v. *Pappas,* 96 Conn. 230, 232, 113 A. 451; where a case is close, the preferable course is to deny a motion for a nonsuit; *Bawol* v. *Gumkowski,* 104 Conn. 746, 133 A. 917; the power to grant a nonsuit and the rules governing the court in granting it are the same whether the action be tried to the court or to the jury. *Pentino* v. *Pappas,* supra, 231.

The evidence may be summarized. The twenty-one plaintiffs, together with twenty-four other men, made up the group of carmen employed by the railroad in the Hartford area who had worked sufficient-

ly long to be considered with respect to an equal distribution of overtime work. The plaintiffs were mostly nonunion men. The defendant union, by reason of its inclusion of the majority of the railroad's carmen in its membership, was the sole bargaining representative of the railroad's carmen, whether union members or not. All carmen operated under a collective bargaining agreement. In 1941, rule 9 of the agreement provided that "Record will be kept of overtime worked and men called with the purpose in view of distributing the overtime equally." Under this provision the management arranged the distribution of the work and the union had no part in it. The duty of keeping the record rested on the railroad. In 1943, the union thought that overtime of a particular kind known as doubling was being assigned unfairly for the benefit of certain favored individuals, and an amendment was made, effective on June 25, 1943, leaving the above quoted language unchanged and inserting immediately prior to it: "Overtime to be distributed in conjunction with the duly authorized local committee of the craft or their representative and the Local Management."

The new provision was carried into effect by the preparation by the shop committee of the defendant union of a list of men, to be kept in the proper railroad office and to be used in calling men. The most desirable kind of overtime work was called a "double" and meant an opportunity to work an additional eight hours in the same twenty-four hour shift over and above the carmen's regular eight hours, at overtime rates, in place of another employee regularly assigned to the job. The list was to be used only in calling in a double. Within a week after the posting of the first list for doubles the plaintiffs began to complain that only union names were on the

list, and appeals were taken under another rule, rule 32, to successive officials of the railroad. Despite the fact that from July 8, 1943, to the date of trial only union names appeared on the lists, and management had knowledge of this fact and deprecated it, no relief was afforded. The reason assigned was that management was powerless to correct the situation, that the lists had been submitted by the union, and that management could do nothing about it. Appeals were then taken to the railway adjustment board under rule 33 in December, 1943, but they were voluntarily withdrawn after they had been pending for several months. There is a mass of evidence as to the doubles done by union men whose names appeared on the lists. There is evidence that the plaintiffs were ready, willing and able to do doubles at all times, if their names had appeared on the lists.

There is a fundamental difference in the approach of the parties. The plaintiffs' case is based upon the claim that the change in the rule made in 1943 has to do only with that kind of overtime known as doubles, and their evidence is directed solely to unfair allocation of it. The defendants contend that the rule comprehends all overtime work and that an analysis of the whole evidence shows that the plaintiffs have not been unfairly discriminated against in the allotment of overtime. It is true that the agreement uses only the word "overtime" and that overtime known as doubles is not mentioned. However, the fact that the words "men called" continued in the agreement is of significance. The lists were made up with an introductory statement, which, when posted before the railroad man in charge of calling employees, read: ". . . the following men will be called for overtime work"; entries in the logbooks of the com-

pany read: "Men to be called for inspection"; "Men to be called if needed to double."

"Overtime" in general was used concerning three and possibly four kinds of work: (a) doubling; (b) ordinary overtime, where a man stayed on beyond the period to complete a job; this was not a matter of "assignment"; (c) work on the wrecking crew; it does not appear how this was assigned, but it was, of course, sporadic; (d) Sunday and holiday work; this was a continuance of an employee's regular job for an extra day; how he was "assigned" to it does not definitely appear; it is referred to as a "normally bulletined job" and again it is said that separate lists were kept. The last three were not doubling, nor were men "called" for them as they were for doubles. In addition to this evidence, there is testimony, as already stated, that the lists were used only in the calling of doubles.

The particular clause in the rule requiring equality in treatment is that which provides that men shall be "called" so as to accomplish that end. The only type of overtime work where men were "called" in the evident sense used in the rule was doubling; and the introductory words to the lists in the logbooks specify that they are to be called "to double." Considering the reason which led to the rule, the use of the term "called" in it, which the court could reasonably find was apt only to doubling, the express mention of doubles in the introduction to the lists in the logbooks, and the fact that there is only an incidental reference in the evidence to any other list than that used to call men for doubling, the court could reasonably find that the change in the rule was intended to apply specifically to doubling.

The shop committee, while made up of union men alone, represented all employees in their relation-

ship with the company. *Steele* v. *Louisville & Nashville R. Co.,* 323 U. S. 192, 200, 65 S. Ct. 226, 89 L. Ed. 173. The committee submitted to the company a list which was in violation of the requirements of the rule as regards equality of treatment, and the company knew this to be so. As the list was in violation of the agreement between the employees and the company, the latter was not bound to accept it, and could disregard it and proceed to assign doubles upon any system which would bring about equality of treatment. When it failed to do that, it made itself a party to the discrimination, and the court could find that there was a conspiracy between the union, acting by its shop committee, and the company.

The defendants claim that the plaintiffs were not entitled to bring this action until they had exhausted their remedies under the contract. Rule 32 of the collective bargaining agreement provides that any employee subject to it who believes that he has been unjustly dealt with or that the provisions of the agreement have been violated shall take his case to the foreman, general foreman, master mechanic or officials corresponding thereto, in the order stated. The defendants concede that the plaintiffs followed the rule. Rule 33 provides in effect that, if the highest designated railroad official and the employee fail to agree, the case shall then be handled in accordance with the Railway Labor Act (44 Stat. 577, 45 U. S. C. § 151 et seq.). That act provides for carrying the procedure through the railway adjustment board. The plaintiffs attempted to do this, but were unable to secure a hearing. The board ruled that its function was to handle disputes between an employee or employees and the carrier, not disputes between employees and a labor organization. Even though a

dispute between the plaintiffs and the railroad would have been in itself within the jurisdiction of the board, that would not avail to give the plaintiffs the relief they claim, because that result could be accomplished only by requiring the union to abide by the rule as to the making of the list of men to be called, and this fact takes the dispute out of the jurisdiction of the board. *Steele* v. *Louisville & Nashville R. Co.,* supra, 195. "The only way that an individual may prevail is by taking his case to the union and causing the union to carry it through to the Board." Administrative Procedure in Government Agencies, Sen. Doc. No. 10, 77th Cong., 1st Sess., Pt. 4, p. 7. The only available administrative remedy left to the plaintiffs was to take steps to cause the union to carry their grievance to the board. It is a necessary inference from the evidence that the union would not take such action. Under such circumstances, it is clear that there was no available administrative remedy and that there is no mode of enforcement other than a resort to the courts, whose jurisdiction and duty to afford a remedy in a proper case are left unaffected. *Steele* v. *Louisville & Nashville R. Co.,* supra. Our conclusion is that the right to bring the present action was not barred by any failure of the plaintiffs to follow the requirements of rule 33.

The right which the plaintiffs lost was to get doubles at time and a half pay. During the period in question, all the doubles were assigned to union men; none were assigned to the plaintiffs. There was evidence as to the rate of pay. The real question is whether there is evidence from which the court could measure the extent of the damage. Where a defendant has by his wrongful conduct made the calculation of damages difficult, he will not be heard to urge such

difficulty as a reason for not assessing by approximation. *Eastman Kodak Co.* v. *Southern Photo Materials Co.,* 273 U. S. 359, 378, 47 S. Ct. 400, 71 L. Ed. 684. Although applied to a different set of facts, what we said in *Ball* v. *Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855, is applicable here: "From the very nature of the situation, the amount of loss cannot be proved with exactitude and all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate. . . . Mere difficulty in the assessment of damages is not a sufficient reason for refusing them where the right to them has been established." See also *Ward* v. *General Ice Cream Corporation,* 118 Conn. 363, 366, 172 A. 781. The testimony shows how many doubles each union man received. The total assigned to all union men, to the complete exclusion of the plaintiffs, was at least 891. The plaintiffs were entitled to their fair share of these doubles. However, the answer is not to be found from these facts alone. It would require computation of the total number of doubles assignments between the adoption of the rule and the trial, and division by the number of employees who were eligible for that work and who wanted it, and a conclusion that any plaintiff would fairly be entitled to claim compensation for that proportion of the work. There is no evidence as to some of these factors. The whole evidence does not afford a basis for a finding of substantial damages as regards any plaintiff. Persistence in the practice followed would, however, constitute a continuing breach of the rights of the plaintiffs; and they are entitled at least to damages, nominal in amount, as a vindication of their rights and for their protection in the future. *Michael* v.

*Curtis,* 60 Conn. 363, 369, 22 A. 949; *Donnelly Brick
Co.* v. *New Britain,* 106 Conn. 167, 174, 137 A. 745.
In a case like this, the fact that damages only nom-
inal in amount could have been awarded is no reason
to refuse a new trial. *Beattie* v. *New York, N. H.
& H. R. Co.,* 84 Conn. 555, 559, 80 A. 709.

The next issue concerns relief by injunction. The
trial court in its memorandum of decision placed its
ruling upon the ground that the plaintiffs must first
exhaust their remedy under the Railway Labor Act.
We have concluded that they had no such remedy.
Even though an injunction rests in the discretion of
the court, error may properly be found where the
court denies such relief, not in the exercise of its
discretion, but because it bases its decision upon an
unsound proposition of law. *Dunnett* v. *Thornton,*
73 Conn. 1, 17, 46 A. 158; *Lasprogato* v. *Lasprogato,*
127 Conn. 510, 515, 18 A. 2d 353; *Bowen* v. *Morgillo,*
128 Conn. 442, 448, 23 A. 2d 719. Moreover, upon a
motion for a nonsuit, unless it appears that no relief
could be granted under the pleadings, their legal
sufficiency is not open to question. *Cook* v. *Morris,*
66 Conn. 196, 203, 33 A. 994; *Pignatario* v. *Meyers,*
100 Conn. 234, 239, 123 A. 263. It is true that none
of the specific prayers for injunctive relief are adapt-
ed to the accomplishment of the result sought, pre-
vention of further discrimination in making out the
lists, but the court, if satisfied upon a full hearing
that the plaintiffs should have relief, might permit,
or even direct, an amendment to the prayers for
relief to accomplish that end. *LaBarre* v. *Water-
bury,* 69 Conn. 554, 556, 37 A. 1068; *Epstein* v. *Blu-
menthal & Co., Inc.,* 114 Conn. 195, 199, 158 A. 234;
*Frosch* v. *Sears, Roebuck & Co.,* 124 Conn. 300, 304,
199 A. 646. The case of *Order of Railway Conduc-
tors* v. *Pitney,* 326 U. S. 561, 567, 66 S. Ct. 322, 90 L.

Ed. 318, relied on by the defendants, presented a situation unlike the one before us in that the controversy there in question was one fully within the jurisdiction of the railway adjustment board. Upon the motion for a nonsuit, the trial court could not properly reach the conclusion that upon a full trial the plaintiffs might not establish a right to injunctive relief.

The defendants claimed a misjoinder of causes of action in that, in addition to the claim against both defendants based on discrimination, the plaintiffs sought recovery of overtime pay for work on Sundays and holidays. The latter claim was distinctly stated in a separate paragraph of the complaint. The sole remedy for misjoinder of causes of action is by demurrer; Practice Book, § 100; and, by failing to demur, the defendants waived the objection. *Sibley* v. *Krauskopf,* 118 Conn. 158, 162, 171 A. 4; Practice Book § 101.

The plaintiff Frenette did not prosecute his appeal.

There is error, the judgment is set aside and a new trial is ordered as to all the plaintiffs except Frenette.

In this opinion the other judges concurred.